## HANS S. HOLLANDER AND CLEMENCE BLUM HOLLANDER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51365.    Filed July 17, 1956.

*Edward Sanders, Esq.*, for the petitioners.
*Richard W. Janes, Esq.*, for the respondent.

828

830

## OPINION.

TURNER, *Judge:* Section 23 (u) of the Internal Revenue Code of 1939 [2] provides that payments which are includible, under section 22

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

 *   *   *   *   *   *   *

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

(k), in the gross income of the wife, are deductible by the husband in computing his net income. In section 22 (k)[3] it is provided that there shall be included in the gross income of the wife periodic payments received by her under a decree of divorce or a written instrument incident to the divorce and in discharge of a legal obligation which, because of marital or family relationship, is imposed upon the husband by such decree or written instrument.

Stated briefly, the facts are as follows: Petitioner and Idy Hollander were divorced in June 1946. More than 2 months prior to the divorce, and in contemplation thereof, petitioner and Idy had entered into an agreement looking to the settlement of all property and support claims, one against the other. This agreement provided for alimony payments to Idy for so long as she lived, or until her remarriage, or until petitioner's death, and was incorporated in the decree of divorce. The agreement specifically provided that petitioner and Idy release, acquit, and forever discharge each other "from any and all claims which he or she now has or may hereafter have against or upon the other for payment of maintenance or alimony excepting as herein provided." In 1948, 2 years subsequent to the divorce, Idy made known to petitioner her desire to marry a man who was "relatively impecunious." "In order to enable Idy to remarry," petitioner entered into a second agreement providing for payments to her subsequent to her pending remarriage, and Idy was remarried within 2 weeks of the execution of this agreement.

Respondent has disallowed all payments made subsequent to Idy's remarriage, contending that the payments were not in discharge of a legal obligation arising out of a marital or family relationship, nor in discharge of an obligation imposed or incurred under a divorce decree or written instrument incident to a divorce or separation, within the meaning of section 22 (k), and therefore are not deductible under section 23 (u).

It is the position of petitioner, on the other hand, that "where a divorced husband is under a continuing obligation to support his former wife, imposed by a decree or agreement incident to divorce,

---

[3] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *

any payments made to discharge this obligation are payments made in discharge of an obligation arising out of the marital or family relationship, even if the obligation is revised by an agreement subsequent to divorce." He cites *Dorothy Briggs Smith*, 16 T. C. 639, affd. 192 F. 2d 841; *Newton* v. *Pedrick*, 212 F. 2d 357, reversing 115 F. Supp. 368; and *Raoul Walsh*, 21 T. C. 1063. In each of those cases, as petitioner indicates in his statement with respect to the principle contained therein, there was a "continuing obligation" on the part of the husband to support his former wife. In the instant case, that is not true, and this fact distinguishes this case from those cited.

A review of the *Smith* case and the rationale of the decision illustrates the variance between that case and the instant one. In the *Smith* case, during the pendency of divorce proceedings, in 1937, an agreement was entered into for the payment of $1,000 a year to the wife for her support and the support of the two minor children. The agreement provided that a final decision as to the support to which the wife would be entitled in her own right would be made at a later date. The divorce was thereafter granted to the wife and the 1937 agreement was made part of the final decree. In 1944, after the husband had made a motion in the divorce court for a reduction of support payments, the parties executed an agreement which terminated the provisions of the 1937 agreement and provided for the payment by the husband of $5,000 a year to the wife for her support. In 1946 the divorce court recognized this agreement. We there held that the payment of $5,000 by the husband in 1948, under the terms of the 1944 agreement, was received by the taxpayer in discharge of a legal obligation which, because of the marital relationship, was incurred by the husband under a written instrument incident to the final decree of divorce. A study of the facts of that case leads to the conclusion that the 1944 agreement was a revision of the 1937 agreement, which admittedly was incident to divorce and in discharge of the husband's obligation for support. A like study of the facts presented in the instant case leads to a contrary conclusion. Unlike the 1937 agreement in the *Smith* case, the 1946 agreement here did not leave open the final disposition of the amount of support to which petitioner's former wife would be entitled. To the contrary, the 1946 agreement between petitioner and Idy was specific and delineated "a permanent and final settlement and adjustment between themselves with regard to their assets, property and property rights and obligations for support and maintenance which each has or may have or owe to the other or to the minor child." The payments to be made under the 1946 agreement were automatically to cease upon Idy's remarriage, and it was further provided in the agreement that both parties released, acquitted, and forever discharged the other "from any and all claims which he or she now has or

may hereafter have against or upon the other for payment of maintenance or alimony excepting as herein provided." Petitioner, under the 1948 agreement, thus agreed to make payments to his former wife even after her remarriage and for which there was and could be no obligation under the specific terms of the first agreement, which in turn had been "ratified, confirmed and approved" in the divorce decree subsequent thereto. Although the second agreement contained words to the effect that it was in settlement of petitioner's obligations for alimony under the first agreement, there could under the first agreement be no liability for the payments here in question. The decree of divorce and the 1946 agreement incorporated therein had specified with particularity that petitioner should have no obligation to support Idy after her remarriage. The 1948 agreement, however, is bottomed on her contemplated remarriage and to a man apparently incapable of supporting her in keeping with her tastes or desires. It thus appears, we think, that the second agreement was not incident to the divorce of petitioner and Idy, but incident to Idy's remarriage, and the payments made thereunder were not only not within the purpose or intent of the first agreement but petitioner's nonliability for such payments, to borrow from the words of the agreement, had been permanently and finally settled.

Petitioner argues that his promise to make payments to Idy after her remarriage was not without consideration, in that he obtained a reduction in the amount and duration of his alimony obligation to her and the immediate legal custody of his daughter. The contention that petitioner reduced the amount and duration of his alimony is necessarily based on the supposition that Idy would not remarry unless petitioner acquiesced in continuing the alimony payments, a supposition in respect of which there is no evidence whatever. With respect to the custody of the child, it appears from the 1948 agreement that petitioner had custody of the child through a "mutual agreement" with Idy prior to the execution of the 1948 agreement and that that agreement did no more than formalize what had already been accomplished in fact by the parties many months prior to the making of that agreement.

It is our conclusion, for the reasons stated, that the payments made subsequent to Idy's remarriage were not made in discharge of a legal obligation which, because of the marital or family relationship, was imposed upon or incurred by petitioner as incident to divorce, and are not within the contemplation of section 22 (k), as petitioner contends. Accordingly, they are not deductible by him under section 23 (u).

*Decision will be entered for the respondent.*