Hans S. HOLLANDER and Clemence Blum Hollander, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15357.

United States Court of Appeals Ninth Circuit.

Oct. 21, 1957.

Louis M. Brown, Irel & Manella, Edward Sanders, Stanford G. Rosenblum, Lawrence E. Irell, Los Angeles, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Marvin Weinstein, Harry Baum, Louise Foster, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before MATHEWS, FEE and HAMLEY, Circuit Judges.

MATHEWS, Circuit Judge.

Respondent, the Commissioner of Internal Revenue, determined that, in respect of the income taxes of petitioners, Hans S. Hollander and Clemence Blum Hollander, husband and wife, for 1948 and 1949,[1] there were deficiences aggregating $10,814.17—$6,866.59 for 1948 and $3,947.58 for 1949. Admitting that there were deficiencies, but alleging that they did not exceed $4,652.83—$4,186.29 for 1948 and $466.54 for 1949—petitioners sought and obtained a redetermination by the Tax Court of the United States. The Tax Court made findings, filed an opinion and entered a decision sustaining respondent's determination.[2] The decision is here for review.

The facts were stipulated and are summarized as follows:

Hans married Idy Hollander on September 30, 1937. Barbara Mia Hollander, their only child, was born on August 12, 1940. On March 6, 1946, at Los Angeles, California, Hans and Idy, in contemplation of divorce, entered into a written agreement entitled "Property Settlement Agreement," which was, in part, as follows:

"The husband [Hans] and wife [Idy] represent * * *

"(e) That they desire to make, on a fair and equitable basis, a permanent and final settlement and adjustment between themselves with regard to their assets, property and property rights and obligations for support and maintenance which each has or may have or owe to the oth-er or to the minor child [Barbara] * * *.

"2. Upon entry of a valid interlocutory decree of divorce or decree of separate maintenance, the husband agrees to pay to the wife from and after entry of said decree * * * an amount equivalent to $10,000.00 per year, payable at the rate of one-twelfth (1/12) of said amount per month, for alimony, support, maintenance and care of the wife and child; provided, however, that if the amount so payable is greater than one-third (1/3) of the income received by the husband for the year concerned, then said yearly amount shall be reduced to an amount equivalent to said one-third (1/3) of said income so received by the husband, which lesser sum shall likewise be payable one-twelfth (1/12) thereof for each month during the year concerned.[3]

* * * Any payments under the provisions of this paragraph 2 shall commence immediately following the entry of said decree and shall continue from and after said date for the remainder of the wife's natural life, or until such time as she shall remarry. If the wife shall remarry, then immediately upon the occurrence of said remarriage, payments as set forth in this paragraph 2 shall automatically cease, but in the event of such remarriage the husband shall continue to pay for the support of the child so long as the child is a minor * * *.

"4. The wife shall have the care, custody and control of the child, but the husband shall have the full right of visitation at reasonable hours, but as often as the husband desires. * * *

1. Petitioners' taxable years were calendar years. Therefore, in this opinion, "1948" means the calendar year 1948, and "1949" means the calendar year 1949.

2. Hollander v. Commissioner, 26 T.C. 827.

3. Thus the agreement of March 6, 1946, required Hans to pay to Idy each month 1/12 of $10,000 or 1/36 of his annual income.

"9. The husband and wife do hereby release, acquit, and forever discharge the other from any and all claims which he or she now has or may hereafter have against the other for payment of maintenance or alimony excepting as herein provided. Each of the parties hereto agrees that he or she will not under any circumstances ask any court in any divorce or separate maintenance action or otherwise for any allowance for alimony, support and maintenance or for any decree, judgment or order affecting the property rights of the parties hereto other than as provided in this agreement. * * *"

On an undisclosed date between March 6, 1946, and June 12, 1946, Idy, then a a resident of Nevada, brought a divorce action against Hans in the Eighth Judicial District Court of the State of Nevada in and for Clark County, hereafter called the Nevada court. In that action, a decree of divorce was entered in her favor on June 12, 1946. Thereby the agreement of March 6, 1946, was ratified, confirmed, approved and made a part of the decree and the parties were ordered to comply therewith. Thereafter, pursuant to the decree, Hans performed all his obligations under the agreement of March 6, 1946. Thus, from and after June 12, 1946, Hans paid Idy $550 per month—1/36 of his annual income[4]—for alimony, support, maintenance and care of Idy and Barbara. However, Barbara, with Idy's consent, lived with Hans from and after November, 1946.

On or before March 16, 1948, Idy informed Hans that she desired to remarry, and that the person whom she desired to marry[5] was "relatively impecunious." Hans, for obvious reasons, desired to facilitate Idy's remarriage. Accordingly, on March 16, 1948, at Los Angeles, California, Hans and Idy entered into a written agreement[6] which was, in part, as follows:

"1. Notwithstanding the provisions of said Property Settlement Agreement [the agreement of March 6, 1946], in settlement of Second Party's [Hans'] obligations for alimony under said Property Settlement Agreement, Second Party will continue to pay to First Party [Idy] the sum of Five Hundred Fifty Dollars ($550) per month on the first day of each and every month, beginning with the first day of March, 1948, and continuing to and including the first day of February, 1951, and shall pay to First Party the sum of Two Hundred Fifty Dollars ($250) per month from the first day of March, 1951, until the first day of February, 1954. Said payments shall continue as provided in this paragraph notwithstanding the fact that the First Party remarries at any time hereafter * * *. Whether or not First Party remarries, the obligations of Second Party to First Party to make payments under this agreement or under said agreement of March 6, 1946, or otherwise, shall cease with the payment to be made on February 1, 1954, or on the date of the death of the First Party, whichever event earlier occurs. * * *

"2. * * * First Party acknowledges that at present the best interests and welfare of said child [Barbara] are served by said child remaining with Second Party, and agrees that until such time as First Party feels that the surroundings of said child with Second Party

---

4. Obviously, $550 is not 1/12 of $10,000. However, it was stipulated that Hans paid Idy $550 per month and performed all his obligations under the agreement of March 6, 1946. Thus, in effect, it was stipulated that $550 was 1/36 of his annual income. See footnote 3.

5. The name of this person is not disclosed by the record.

6. Hans and Idy were residents of California on March 16, 1948, and at all times thereafter.

have changed to the detriment of the interests and welfare of said child, said child shall remain with Second Party, but with full rights of visitation by First Party. * * *

"5. * * * Except as herein specifically set forth, said Property Settlement Agreement dated March 6, 1946, between the parties hereto is and shall be and remain in full force and effect."

Idy remarried on March 29, 1948.[7] On or about May 18, 1948, Hans brought an action against Idy in the Superior Court of the State of California in and for Los Angeles County, hereafter called the California court.[8] In that action, a judgment was entered on June 30, 1948. Thereby the agreement of March 16, 1948, was ratified, confirmed and approved, and Hans was ordered to make payments to Idy pursuant thereto.

Petitioners (Hans and Clemence) were married on August 5, 1948. Under and pursuant to the agreement of March 16, 1948, Hans made to Idy nine payments of $550 each, aggregating $4,950, between March 29, 1948, and December 31, 1948, and twelve payments of $550 each, aggregating $6,600, in 1949. Petitioners, in their income tax return for 1948, deducted the $4,950 from Hans' gross income for 1948 in computing his net income for 1948 and, in their income tax return for 1949, deducted the $6,600 from Hans' gross income for 1949 in computing his net income for 1949. These deductions were disallowed by respondent and by the Tax Court.[9] Petitioners contend that they should have been allowed. This contention is based on §§ 22 and 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 22(k), 23

(u), the applicable provisions of which were as follows:

"§ 22. Gross Income * * *

"(k) Alimony, etc., income.— In the case of a wife who is divorced * * * from her husband under a decree of divorce * * * periodic payments * * * recieved subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is * * * incurred by such husband * * * under a written instrument incident to such divorce * * * shall be includible in the gross income of such wife * * *."

"§ 23. Deductions from gross income.

In computing net income there shall be allowed as deductions: * * *

"(u) Alimony, etc., payments. In the case of a husband described in section 22(k), amounts includible under section 22(k), in the gross income of his wife, payment of which is made within the husband's taxable year. * * *"

At all times after June 12, 1946, Idy was a wife divorced from her husband (Hans) under a decree of divorce. The payments here involved—the nine payments, aggregating $4,950, made by Hans to Idy between March 16, 1948, and December 31, 1948, and the twelve payments, aggregating $6,600, made by Hans to Idy in 1949—were periodic payments received subsequent to the decree in discharge of a legal obligation which, because of Hans and Idy's marital relationship, was incurred by Hans under

---

7. The name of the person whom Idy married on March 29, 1948, is not disclosed by the record.

8. See footnote 6.

9. In order that there be no difficulty in reconciling the figures in the record, it should be observed that a portion of the deduction claimed by petitioners in the income tax return of 1949 and disallowed was a series of payments made by Hans

Hollander to the United States. This sum of $1,225.45 was paid on account of the liability of his former wife for income taxes for 1948. Likewise, another disallowed deduction was the sum of $42.00, paid to the State of California because of the liability of his former wife for income taxes to the state in the same year. There is no legal consequence involved as a result of such payments and disallowances.

a written instrument incident to the divorce, namely, the agreement of March 16, 1948. Hence these payments were includible in Idy's gross income.[10] Hans paid Idy the $4,950 within his taxable year 1948, and paid her the $6,600 within his taxable year 1949.[11] Hence the deductions mentioned above should have been allowed.[12]

The Tax Court held, and we agree, that the agreement of March 16, 1948, was incident to Idy's remarriage. However, being incident to Idy's remarriage did not keep it from being incident to the divorce. It could be and was incident to both events.

The Tax Court found that the agreement of March 6, 1946, "was declared to be a permanent and final settlement of property or property rights and obligations for support 'which each [party] has or may have or owe to the other or to the minor child [Barbara].' " This finding was unsupported by evidence and clearly erroneous. As indicated above, Hans and Idy, in and by the agreement of March 6, 1946, "represented" that they desired "to make, on a fair and equitable basis, a permanent and final settlement and adjustment between themselves with regard to their assets, property and property rights and obligations for support and maintenance which each has or may have or owe to the other or to the minor child;" but they did not "represent" or declare that the agreement of March 6, 1946, was a permanent or final settlement or adjustment. Much less did they renounce their right to make a

new agreement—a right which they exercised on March 16, 1948.

Although the agreement of March 6, 1946, was ratified, confirmed and approved by the decree of divorce, Hans and Idy were not thereby precluded from making a new agreement. The agreement of March 16, 1948, was ratified, confirmed and approved by the California court,[13] but, so far as the record shows, was not ratified, confirmed or approved by the Nevada court—the court which granted the divorce. That, however, is immaterial;[14] for Hans and Idy, being of age and under no legal disability, could make an agreement without any court's authorization, ratification, confirmation or approval.

As indicated above, the payments here involved were received in discharge of an obligation incurred before Idy's remarriage—the obligation incurred by Hans under the agreement of March 16, 1948. That the payments were received after Idy's remarriage is immaterial.[15]

As pointed out in the Tax Court's opinion, Idy might have remarried even if the agreement of March 16, 1948, had not been made. Actually, however, the agreement of March 16, 1948, was made, and Idy did not remarry until after it was made. With what might or might not have happened if the agreement of March 16, 1948, had not been made, we are not concerned.

Decision reversed and case remanded for further proceedings in conformity with this opinion.

10. See § 22(k), supra; Commissioner v. Miller, 9 Cir., 199 F.2d 597; Smith v. Commissioner, 1 Cir., 192 F.2d 841; Feinberg v. Commissioner, 3 Cir., 198 F.2d 260; Grant v. Commissioner, 2 Cir., 209 F.2d 430; Newton v. Pedrick, 2 Cir., 212 F.2d 357; Holahan v. Commissioner, 2 Cir., 222 F.2d 82.

11. See footnote 1.

12. See § 23(u), supra, and cases cited in footnote 10.

13. See footnote 6.

14. Newton v. Pedrick, supra.

15. Newton v. Pedrick, supra.