In the Matter of the Estate of GEORGE L. BOURNE, Deceased.'
Surrogate's Court, Westchester County, March 31, 1943.

*Sanford H. E. Freund, Henry B. Guthrie* and *E. Lacy Finnan* for Frederic A. Schaff et al., as executors of George L. Bourne, deceased.

*Robert P. Smith, Joseph A. Mitchell* and *John H. Wahl* for State of Florida.

*Thomas P. McLaughlin, Jr., Edward Devlin* and *Jerome M. Hirsch* for New York State Tax Commission.

*Burton C. Meighan* for Frances B. Clark.

*Lester Albertson* and *Silas S. Clark,* special guardians.

MILLARD, S.  Although this proceeding is one to fix the estate tax, pursuant to article 10-C of the Tax Law, the sole question litigated and now presented for determination is whether at the time of his death the decedent was domiciled in this State or in the State of Florida.  The procedure followed is similar to that adopted and approved in *Matter of Trowbridge* (266 N. Y. 283), the respondent State of Florida having been granted permission to intervene by an order of this court based upon the consent of the State Tax Commission of New York and Florida having availed itself of the license so tendered.  Due to certain conflicts of interest between infant remaindermen, the court was obliged to and did appoint two special guardians, one of whom asserted the domicile of the decedent to have been in Florida and the other joined with the State of New York by claiming domicile in the latter State.  It is estimated that the amount of tax under the laws of either State will exceed the sum of $200,000.  The matter was sharply contested and the facts ably presented by respective counsel.  Since the question of domicile is one primarily of fact (*Dupuy* v. *Wurtz,* 53 N. Y. 556), it is necessary to consider and analyze the vast array of evidence presented.

The decedent was born on April 4, 1873.  While still a young man he established himself in business in Chicago in or about the year 1900.  Thereafter and prior to 1925 he transferred his business interests to New York City where he maintained

an office continuously until the time of his death. Prior to 1926 decedent and his family had their residence on Boston Post Road, town of Mamaroneck, county of Westchester, State of New York. In 1926 at a cost of approximately $265,000 he purchased a dwelling in the same township known as 60 Weaver Street (hereafter referred to as the Weaver Street property), where he and his family resided continuously until 1937. The premises so purchased consisted of approximately twelve acres of land upon which had been erected a main dwelling containing twelve rooms and four or five baths, in addition to which there was a four-car garage, a four- or five-room cottage, a greenhouse, a caretaker's house and other small outbuildings. The grounds were well maintained and landscaped and the main dwelling was appropriately furnished and equipped for all-year residence. It is undisputed that between 1926 and 1937 the decedent had no other permanent place of abode. During this period decedent's family consisted of himself, his wife, two daughters and a son. In the spring of 1937 decedent and his wife separated as a result of matrimonial differences, a formal separation agreement having been executed in November of the same year. Thereafter decedent's wife purchased and established a separate residence in the State of Connecticut where she lived with her daughters. The son William remained with his father and continued his residence at the Weaver Street address.

As is demonstrated by the size of his estate, the decedent was most successful in his business ventures and held directorships and offices in several affiliated companies, the main or so-called parent company having its principal office at 60 East 42nd Street, New York City. That the decedent's office was that of the parent company is not disputed. Several other relevant facts are likewise undisputed. For many years prior thereto and at the time of his death, practically all of decedent's stocks and bonds, valued at $2,848,190.69 in the Federal tax return, were kept in New York City, it appearing that only a bond and mortgage in the sum of $6,400 were located in Florida at the time of his death; during the same period he had accounts with brokerage houses in New York City and maintained his principal bank accounts with New York City banks. He was a member of several social and recreational clubs in the city of New York and in Westchester County. It was also shown that during the disputed period hereinafter alluded to the decedent's charitable contributions were made exclusively to organizations having their offices or spheres of activity in or near the city of New York and Westchester County.

The State of Florida concedes that prior to 1937 the decedent was domiciled in this State, but contends that he thereafter abandoned such domicile and acquired a new one in the State of Florida. This contention is based upon a series of events occurring subsequent to 1937 and declarations made by the decedent beginning in the fall of 1937. The first intimation of the decedent's alleged intention to change his domicile appears from a statement made to a lifelong friend in a conversation held at the Weaver Street residence in the late fall of 1937. Thereafter and on January 7, 1938, decedent left New York for Florida declaring at the time that he intended to establish his domicile in Florida. The decedent's yacht "Onwego", having preceded him, upon his arrival was moored at the Flamingo Hotel dock at Miami Beach. The yacht, which had been owned by decedent since 1930, was 120 feet long and in construction, accommodations and appointments was complete in all respects. In addition to the usual aft deck, it had a main salon, smoking room, dining salon, two bedrooms, four cabins and three baths, and in addition thereto had quarters for the crew. It was conceded that there were sleeping accommodations for at least eight people. While moored at the Miami dock the decedent caused to be installed land telephone connections and during his stays in Florida in 1938 and thereafter used and occupied the yacht as both a home and an office. In fact it is undisputed that the yacht was the only place in the State of Florida actually occupied by decedent as an abode during the disputed period. It further appears that except for the purchase of a new auxiliary cruiser and the installation of improved ship-to-shore telephones and general redecoration of the interior, the yacht was not altered or changed in any material respects after the separation of decedent and his wife.

That the decedent ostensibly planned to effect a change of domicile to the State of Florida and was most vehement in his expressions of such intent is clear. Upon arrival in Miami in January, 1938, he consulted a local attorney and tax authorities as to the necessary legal steps to be taken to become domiciled in the State of Florida. Under date of May 4, 1938, decedent acquired title to a furnished house known as No. 5300 La Gorce Drive, Miami Beach, Florida, but concededly never lived in it. This property was thereafter deeded back to the grantor by an instrument dated April 27, 1939, there being some evidence tending to indicate, however, that such return deed was prepared at the same time as delivery of the

deed to decedent as grantee and that possibly decedent was never the actual owner of said property. In both deeds the address of decedent was recited to have been in the " County of Dade, in the State of Florida." During the period of approximately one year that legal title to this property was in his name, decedent referred to and in formal documents recited 5300 La Gorce Drive, Miami Beach, Florida, as his legal residence. About the time that he relinquished title to 5300 La Gorce Drive and of his departure for New York, under date of May 1, 1939, decedent subleased from his Florida counsel for a period of one year the second floor of a house known as 1010 West Avenue, Miami Beach, the first floor of which was occupied by such attorney. It was shown that decedent never had any personal belongings at this address except two traveling bags, and slept there on only two occasions. On and after the date of such sublease, however, decedent referred to and represented 1010 West Avenue as his legal residence. There was also some evidence that decedent considered the purchase of shore property at Miami Beach for the purpose of providing a dock for his yacht and erecting thereon a guest house, but these plans were never consummated.

It further appears, according to the records of Dade County, that personal property located at 5300 La Gorce Drive, Miami Beach, valued at $80, was assessed against decedent for the year 1938 and a tax imposed thereon in the sum of $4.49; a like tax in the sum of $15.85 for personal property located at the same address valued at $250 was imposed thereon for the year 1939. It was admitted that no tax was assessed by the State of Florida against the yacht " Onwego " during the disputed period. It also appears that the decedent made and filed with the Dade County tax authorities returns for intangible personal property covering the years 1939 and 1940 in which he listed intangibles valued at $3,494,486.00 for the year 1939 and $3,384,398.23 for the year 1940. The latter return is dated May 21, 1940, four days prior to his death, and although it was signed by decedent, " 1010 West Avenue, Miami Beach, Florida " was typed in as his address. It is to be here noted that the aforementioned lease of 1010 West Avenue expired by its terms on April 30, 1940, and there is no proof of its renewal. Furthermore, as is more fully hereinafter set forth, on this date decedent was actually residing at the Weaver Street premises, and his yacht was in New York.

The decedent filed a resident New York State income tax return for the period January 1 to January 11, 1938, and a

nonresident return for the balance of that year, both returns being dated April 14, 1939, and the residence addresses being given as 5300 La Gorce Drive, Miami Beach, Florida; the business address in both instances was given as 60 East 42nd Street, New York City. He also made and filed a 1939 nonresident New York State income tax return dated April 13, 1940, reciting his residence as 1010 West Avenue, Miami Beach, Dade County, Florida. In the 1938 Federal income tax return dated February 15, 1939, the decedent gave his residence as 5300 La Gorce Drive, Miami Beach, Florida, and his business address as 60 East 42nd Street, New York City. In addition thereto the following facts were established: Under date of March 21, 1939, the decedent applied to the Florida tax authorities for a homestead exemption with respect to the 5300 La Gorce Drive property; he executed and filed with the Commissioner of Jurors of Westchester County an affidavit sworn to September 12, 1938, stating that he did not reside at " Weaver Street in the Town of Mamaroneck, Westchester County ", and giving his address as Miami Beach, Florida; under date of December 21, 1938, decedent made and filed a declaration of citizenship in Florida; he registered at Miami Beach for the 1939 local elections and applied for and voted by absentee ballot in the city elections for that year; he applied for nonresident membership in New York clubs in cases where the by-laws thereof so permitted and where he did not enjoy life memberships. It further appears that on December 15, 1938, he executed a new will prepared by his Florida attorneys which proved to be his last will and testament and which has been probated herein; he stated therein not only that he was a resident of Miami Beach, Florida, but also expressly declared that he was not domiciled in the State of New York. The will so executed in Florida revoked a prior will dated July 28, 1937, which had been prepared by his New York attorneys and which recited his residence as Mamaroneck, in the county of Westchester, State of New York. The Florida will nominated as his executors and trustees the same persons and banking corporation as the New York will.

The following are some of the more salient facts which it is contended negative or explain the evidence offered to establish that decedent changed his domicile to Florida. During the entire disputed period from January 7, 1938, to the time of his death, the decedent continued to maintain the Weaver Street property in substantially the same manner as prior thereto. This was sought to be explained by evidence designed to estab-

lish that the decedent so maintained the property for the sole purpose of effecting a sale. In the interim it served as a home for his adult unmarried son. In this connection it was admitted that the decedent gave his son an allowance for the purpose of and in an amount sufficient to maintain the property and to pay the household expenses. The bills for telephone, electrical service and fuel oil up to the date of death were rendered, however, in the name of decedent. The evidence was also quite clear that the decedent continued to make the Weaver Street property his residence during such periods as he spent within the State of New York, the same bedroom as formerly occupied by him being reserved and ready at all times for his use and part of his wardrobe being kept there. Prior to the separation the domestic servants consisted of five maids, one chauffeur and four gardeners. Thereafter the force was reduced to two maids, a butler, a chauffeur and three gardeners during the summer months, and to a maid, a butler, a chauffeur and one gardener during the winter months. The 1939 and 1940 registrations for two automobiles owned by decedent and garaged at the Weaver Street premises recited his residence as Weaver Street, Larchmont, county of Westchester, State of New York, and his business address as 60 East 42nd Street, New York, New York. Upon his return to New York from a trip to Europe on June 21, 1938, the "Baggage Declaration and Entry", signed by the decedent, stated that he resided at Weaver Street, Larchmont, New York. On May 10, 1938, the decedent entered into an agreement with the County of Westchester for the sale of certain real property for highway purposes in which he recited his residence as town of Mamaroneck, Westchester County, New York. In an affidavit of title and deed thereafter executed on October 8, 1938, he likewise gave his residence as Weaver Street, in the town of Mamaroneck, county of Westchester, State of New York. It is of some significance that at the time of executing the contract above mentioned, decedent crossed out the words " Village of Larchmont " and inserted in his own handwriting " Town of Mamaroneck" as his place of residence, initialing the change so made. There was also sufficient evidence to establish that for many years prior to 1938 the decedent had spent approximately four months out of each year in Florida, and that there was no material change in this respect after January 7, 1938, except that upon the advice of his tax attorneys he did not spend more than seven months out of each year within the State of New York. This was accomplished by the decedent's leaving for Florida approximately a month earlier in each year, thereby

spending annually one month more in Florida than theretofore. It was also established that the yacht "Onwego" was permanently registered in New York Harbor on June 7, 1939.

The decedent became ill in August, 1939, and from then to the time of his death on May 25, 1940, was under his doctors' care almost constantly. In November, 1939, he went to Miami Beach by train accompanied by his family physician, and during his stay lived on the yacht, which was again moored at the Flamingo Hotel dock, as he did during the two previous winter seasons. On April 30, 1940, the decedent, again accompanied by his family physician, left Miami Beach by train, arriving in New York on May 1, 1940. Following decedent's departure the yacht proceeded north and at the time of death was in drydock at City Island, New York, for reconditioning. Pursuant to arrangements made by telephone with his son, he was met at the train by his wife, one of his daughters and his son and was taken immediately to the Weaver Street residence where all had dinner. The decedent was confined therein by his continuing illness until his admission to the Lawrence Hospital, Bronxville, New York, on May 23, 1940, where he died on May 25, 1940, at the age of sixty-seven. It was conceded that the funeral services were conducted from the Weaver Street residence and the remains interred in Kensico Cemetery in this county.

The admission cards of the Bronxville Hospital pertaining to both the last illness of decedent and a prior admission for observation in 1939 were offered solely to establish decedent's residence at the respective times as the Weaver Street address and, upon objection thereto being made, decision was reserved. Although the hospital records are clearly admissible for some purposes (Civ. Prac. Act, § 374-a), there is here no proof as to the source of the information with respect to the statements of residence appearing therein. Under these circumstances such records are inadmissible to establish the residence of decedent. (*Johnson* v. *Lutz,* 253 N. Y. 124; *Matter of Fischer,* 151 Misc. 74, affd. 243 App. Div. 685.) The objection is accordingly sustained. A similar ruling is made with respect to the death certificate which was admitted into evidence subject to connection, and such exhibit will be deemed stricken from the record.

Since concededly the decedent was domiciled in New York prior to January 7, 1938, such domicile continues until superseded by a new one. (*Dupuy* v. *Wurtz,* 53 N. Y. 556, *supra; Matter of Newcomb,* 192 N. Y. 238; *Matter of Johnson,* 259 App. Div. 290, affd. 284 N. Y. 733; Restatement, Conflict of Laws, § 23.) The burden of proving this change is upon the party who

asserts it. (*Matter of Benjamin,* 176 Misc. 518, 533, affd. 263 App. Div. 981, affd. 289 N. Y. 554.) As is indicated by the foregoing summary of the evidence, the State of Florida relied in part upon the numerous formal declarations made by the decedent as proof of the alleged intent to effect a change of domicile. That mere formal declarations to tax authorities and others, unaccompanied by facts consistent therewith, are insufficient to sustain a contention of change of domicile is now well settled. (*Gilbert* v. *David,* 235 U. S. 561; *Texas* v. *Florida,* 306 U. S. 398; *Babcock* v. *Slater,* 212 Mass. 434; *Matter of Trowbridge,* 266 N. Y. 283, *supra; Matter of Benjamin, supra.*) In *Matter of Benjamin* (176 Misc. 518, 533, *supra*) Surrogate FOLEY made the following pertinent observations on this particular question: " Concepts of the law of domicile have in recent years been somewhat changed by the leading authorities of our State and the United States Supreme Court. The trend has been away from the former policy of attributing controlling weight to the formal declarations of a decedent as indicating his choice. More regard is now given to the test of whether the place of habitation is the permanent home of a person, with the range of sentiment, feeling and permanent association with it. (1 Beale, Conflict of Laws, pp. 124, 127.) "

In *Matter of Johnson* (259 App. Div. 290, 291, *supra*) Mr. Justice CLOSE, now Presiding Justice of the Appellate Division, stated the test to be applied to proof of domicile as follows: " In order to effect a change there must have been proof that the decedent had freely chosen another domicile and that this choice was followed by physical presence at a dwelling place and the intention to make it a home. There must be concurrence of the fact and the intent, the *factum* and the *animus.*"

A related principle must also be kept in mind that " the acquisition of a new domicile involves an intent to abandon the old dwelling place as a home." (*Matter of Benjamin, supra,* p. 533.) Applying these principles to the facts of this case leads to only one conclusion, that the decedent never abandoned the Weaver Street residence as his permanent home and consequently could not acquire a new one in Florida. In the first place, his declarations as to legal residence and domicile, made subsequent to January 7, 1938, which Florida asserts to be the beginning of the disputed period, were not uniformly consistent with an abandonment of his New York residence as his permanent home and the acquisition of a new one. As late as the year 1939 he referred to the Weaver Street address as his legal residence in certain papers hereinabove mentioned.

Although the law may not question motives for desiring to effect a change of domicile, except as they may indicate intention (*Matter of Newcomb,* 192 N. Y. 238, *supra*), it does demand that the intent be manifested by unequivocal acts. (*Dupuy* v. *Wurtz,* 53 N. Y. 556, *supra*.)

A review of the pertinent authorities shows that declarations of residence in wills and other. formal documents, inconsistent with the conduct of the person, have been frequently disregarded. (*Texas* v. *Florida,* 306 U. S. 398, *supra; Matter of Hernandez,* 172 App. Div. 467, affd. 219 N. Y. 566; *Matter of Wendel,* 144 Misc. 467; *Matter of Lydig,* 191 App. Div. 117.) In Beale on Conflict of Laws (vol. 1, p. 253) the author comments upon the effect of declarations as follows: " Since actions speak louder than words the conduct of a person is the most important evidence of his intention to acquire a domicil in a place. In any case of discrepancy between his declarations and his acts, his declared intention yields to the conclusion drawn from his acts." In *Matter of Harkness* (183 App. Div. 396, 407) the court commented upon declarations inconsistent with conduct as follows: " These conflicting declarations afford another illustration of the weakness of declarations as against what may be called the acts of the decedent, going to make up the manner and conduct of his life. Following the statement of the rule in the leading case of *Dupuy* v. *Wurtz* (*supra*), this court has repeatedly disregarded declarations when they conflict with acts, which are more persuasive in showing intent." Similarly, the payments of personal property taxes in Florida may be some evidence of intent, but they are not of themselves controlling. (*Matter of Lydig, supra*.) That his act of registering as a voter and in voting in Florida did not necessarily establish his domicile there is also well settled. (*Matter of Lydig, supra; Matter of White,* 116 App. Div. 183.) There are additional acts of decedent and acts coupled with declarations, either oral or in writing, all of which have been considered by the court in reaching its conclusion. Although all of these facts, taken together, are some evidence of a plan or desire to effect a change of domicile, in the absence of conduct consistent therewith, however, they are insufficient to establish a new domicile in law or fact. (*Matter of Newcomb, supra; Texas* v. *Florida, supra*.)

The failure of decedent to acquire a permanent place of abode in Florida, his contradictory declarations of legal residence employed in various documents, his colorable residence at both premises given as his Florida addresses, his retention of the

Weaver Street residence as his only place of abode within the State of New York, and which he uniformly occupied almost exclusively as his sole place of abode whenever within the State, his return to the Weaver Street residence during his last illness, the return of the yacht to New York waters where it was located at the time of his death, his general conduct and mode of life and the lack of any material change therein after December, 1937, all negative and nullify the effect of the planned and often-repeated formal and informal declarations to the contrary made by him. His statements and especially his acts lacked the finality and consistency essential to a finding that he had abandoned his New York residence. Accordingly the court finds that the decedent did not in fact abandon his domicile in this State. In considering the facts and in arriving at a determination the court has assumed that as a matter of law the yacht " Onwego " was capable of constituting a permanent place of abode. (Restatement, Conflict of Laws, § 17.)

The facts clearly demonstrate that the Weaver Street premises continued to be the decedent's home, his sole permanent place of abode to the time of his death. The State of Florida having failed in sustaining the burden of proof imposed upon it by law, I find that at the date of death the decedent was resident of and domiciled in the State of New York and that his legal residence was at 60 Weaver Street, Town of Mamaroneck, Westchester County, New York.

Settle order accordingly.