Arthur D. Brennan, J.
The plaintiff has brought this action for a judgment declaring that she is the lawful wife of the male defendant and that a divorce procured by him in Arkansas on June 18,1956 is invalid and of no force or effect. The action is based on the claim that the said defendant was not a bona fide domiciliary of the granting' State.
The above action was originally brought against the first-named defendant only and a trial of the issues was had in June of 1957. Thereafter this court observed that said defendant’s second wife had not been made a party to this action and that under the pleadings and the proof, she was an indispensable party in whose absence no efficacious declaratory judgment could be had. The court thereupon directed that a supplemental summons and an amended complaint issue herein to the end that said second wife be brought in as a party defendant in and to this action. (See Lauricella v. Lauricella, N. Y. L. J., Aug. 19, 1957, p. 6, cols. 1, 2.) Pursuant to an order duly made and entered herein, such summons and complaint did issue; the same were served personally on the last-named defendant; she duly appeared by an attorney and served an answer to the amended complaint; and in June of this year, this court was advised that with the exception of four exhibits which were offered in evidence by her (to which offer and submission, counsel for the plaintiff did not object) she desired to offer no further or additional proof beyond that which had been heard and received at the afore-mentioned trial.
The evidence in this case establishes that in 1953, the male defendant, who was a physician and surgeon duly licensed to practice as such in this State and in the State of New Jersey and who theretofore had always resided in this State, seriously contemplated leaving the State of New York and establishing a residence and medical practice in some other part of the United States. Since 1949 he had been separated from the plaintiff herein (whom he married in New York City in 1940); in February of 1953 she had obtained a separation decree against him on the grounds of abandonment and failure to support; and his practice had deteriorated to some degree. His sister, who lived in Florida, suggested that he come to live with her there and that he prepare for the Florida examination for admission *627 to practice as a physician in that State; this suggestion was not adopted by said defendant. At this time, however, he became interested in Hot Springs, Arkansas and in the medical effects of the radioactive waters there located. He then entered upon a course of action in order that he might explore the possibility of establishing himself in Hot Springs and to prepare himself for such a change if his admission to practice medicine in Arkansas could be conveniently effected. In September of 1953 he consulted an attorney to advise and aid him in being admitted to the practice of medicine in the latter State without taking any examinations for such admission. In the same month he went to Hot Springs, rented a small apartment and stayed there for about six weeks. He applied for, and some time thereafter (the date does not appear) received, a certificate of his fulfillment of the “ basic science requirements ” of that State. He then applied to the Arkansas State Medical Board for admission to practice, without examination. In 1953 he did not remain in Arkansas for more than six weeks but he returned to and remained in the State of New York. He continued the rental of his said apartment at Hot Springs until November of 1955. During 1951 and 1955, he journeyed to Arkansas on three or four occasions in each of these two years and each visit lasted from one to three weeks. These visits were made by him primarily to ascertain, and to confer with respect to, the progress being made on his aforesaid application for a license to practice medicine in that State. After the* passage of about one year following the making of said application, this defendant was advised that he would he required to take a written examination but he did not do so, as it was his opinion that it would take him a year or more to prepare for the same.
It is clear that during this exploratory period, and particularly during 1955, he continued to reside with his father at Mt. Vernon, N. Y., where he had previously resided. He continued his rental of two apartments (inclusive of his office) at No. 10 Park Avenue in New York City and these apartments were not sublet by him until December of 1955. Further during the aforesaid period of exploration, he asserts that he tried to dispose of the equipment contained in his New York City office and although he states he advertised the same for sale, said equipment was never sold by him. During January and February of 1956 he still resided with his father in Mt. Vernon, N. Y., and it was from that address that he applied for and received an automobile registration plate “ MD 615 ”, (issued by the State of New York for the year 1956) on a Buick Sedan which he then owned. In 1955 he was treating certain of his patients at the *628 Park East Hospital in the Borough of Manhattan. It also appears that during the aforesaid period, he maintained a telephone listing in the Manhattan telephone directory and he continued to maintain his checking and savings accounts with banks in New York City. In 1954 he registered as a voter in Arkansas but he did not vote there in that year nor did he do so in 1955 or in 1956. In addition, during this first above-mentioned period, he opened a bank account in Hot Springs and he maintained a telephone listing in that community. As stated above, he discontinued the rental of his apartment at Hot Springs in November of 1955 and it is clear that he maintained no residence in Arkansas between that month and the end of February of 1956.
Turning now to a consideration of the defendant’s activities during the period beginning with March 1, 1956, to the time of the trial in this action, it appears that on or about March 1, 1956 this defendant went to Hot Springs where he continuously resided for a period of about three and one-half months. He disposed of his Buick automobile (which had been registered, as aforesaid, in this State) and in March of 1956 he purchased a 1948 Cadillac automobile which he registered in his name in Arkansas. In the same month, he there applied for and received an automobile operator’s license. Further, in the same month, he consulted an attorney at Hot Springs with respect to a proposed divorce action to be brought by him in Arkansas against the plaintiff herein; and on or about May 16, 1956 he signed the complaint in such divorce action. In April or May of 1956 he purchased a three-bedroom motel in Hot Springs; he obtained a license to operate the same; and he resided therein until about the middle of June of 1956 when he returned to Mt. Vernon, N. Y., to attend his father’s funeral. About one week later, he again journeyed to Hot Springs where he remained for about two weeks and he then returned to New York City. On June 18, 1956 a decree of divorce was granted to said defendant by the Chancery Court of Garland County, Arkansas, but the plaintiff herein was not personally served with process (in that action) within that State nor did she appear in or defend said action.
On July 9,1956 this defendant married the codefendant herein and they left for Europe on July 12, 1956. They returned to New York City on October 6,1956 and following said return they resided together in the Borough of Manhattan.
It also appears that in December of 1956, the defendant received and treated certain patients at No. 10 Park Avenue in New York City. Since July 9,1956 the defendant did not spend any time in Arkansas except for one short visit which he made there in April of 1957 after a fire had occurred in and had caused *629 damage to his aforesaid motel which, during his absence, had been rented and managed for him by a neighboring motel owner. At no time during this latter period was the defendant admitted to practice medicine in Arkansas; and except for the aforesaid operation of his said motel (from which he earned a profit of about $400), it appears that during said period he was not regularly engaged in the State of Arkansas in any employment, business or profession. All Federal income tax returns made and filed by him during the years 1953, 1954 and 1955 showed his address as No. 10 Park Avenue, New York City and all of the same were filed from this State. At the time of the trial of this action, his Federal income tax return for the year 1956 had not been made or filed, said defendant’s time to file the same having been extended.
From a consideration of all of the evidence in this case, this court holds that during the first above-mentioned period, the first named defendant was unquestionably a domiciliary only of the State of New York. The proof in this case does not show whether, under the statutes of Arkansas or under the rules and regulations of the Arkansas State Medical Board, it was and is required that every applicant for admission to the practice of medicine in that State be a resident thereof for a specified time. If such a requirement did exist, then the above-mentioned sporadic activities indulged in by said defendant during said first period might be considered as an attempt to fulfill such requirement. But without speculating on this subject, it is clear, nevertheless, that the said defendant’s maintenance of an apartment between September of 1953 and November of 1955, his residence therein for only six weeks at the start of said period, his afore-mentioned short visits (of one to three weeks each) made by him on three or four occasions during each of the years 1954 and 1955, together with the opening of a bank account and the maintenance of a telephone listing could not and would not create and constitute a new, bona fide domicile in Arkansas wherein he had not previously resided — particularly when such activities are viewed against the background of said defendant’s continued ties to, and continued residence and activities in, the State of New York of which he was a native.
With respect to the second above-mentioned period, this court finds that although the said defendant did reside in the State of Arkansas for a continuous period of three and one-half months and thereafter sojourned in that State on two short occasions, as above mentioned, his presence therein was not accompanied by a bona fide intention to make Arkansas his home, either permanently or at least for an indefinite or unlimited length of time. *630 Bather, it is this court’s view that his presence in Arkansas during said second period was for the special and temporary purpose of obtaining .a divorce. In these circumstances, this court finds that his alleged domicile in Arkansas during this latter period was not real. (Matter of Newcomb, 192 N. Y. 238; Matter of Johnson, 259 App. Div. 290, affd. 284 N. Y. 733; Matter of Bourne, 181 Misc. 238, affd. 267 App. Div. 876, affd. 293 N. Y. 785; Williams v. North Carolina, 325 U. S. 226.) Nor in the circumstances here present, is this defendant aided by the fact that he registered an automobile in that State and therein obtained a license to operate a motor vehicle as well as a license to conduct a motel, for it has been held that mere formal declarations to governmental authorities, unaccompanied by facts consistent therewith, are insufficient to sustain a contention of a change of domicile. (Gilbert v. David, 235 U. S. 561; Texas v. Florida, 306 U. S. 398; Matter of Trowbridge, 266 N. Y. 283; Matter of Benjamin, 176 Misc. 518.)
This court is of the opinion that on the evidence in this record, the plaintiff herein has established that the male defendant has never been a bona fide domiciliary of the State of Arkansas and she has sustained the burden of overcoming the apparent jurisdictional validity of the decree of divorce obtained by said defendant in that State.
Accordingly, a declaratory judgment in favor of the plaintiff may be entered.
The foregoing constitutes the decision of this court pursuant to section 440 of the Civil Practice Act. Settle judgment on notice.