**Harold E. WONDSEL, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 437, Docket 29313.**

United States Court of Appeals
Second Circuit.

Argued May 6, 1965.

Decided Aug. 2, 1965.

Gerald H. Ullman, New York City, for petitioner.

Norman H. Wolfe, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, on the brief), for respondent.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge.

The Commissioner of Internal Revenue (the Commissioner) determined income tax deficiencies on the part of Harold E. Wondsel (Harold) for the years 1957–59. Harold sought review of those determinations and the Tax Court upheld them. Harold now seeks review of the Tax Court's decision. The primary question concerns the effect for income tax purposes of a state court decision declaring void an *ex parte* divorce obtained in another jurisdiction, and not attacked in that jurisdiction, on a taxpayer's status as divorced or married.

In 1927 Harold married May in New York. In 1936, still in New York, they executed a separation agreement which provided in relevant part that Harold pay May $65 a week for her support and that in case of a divorce the terms relating to support should, at May's election, be incorporated into the decree. Then in 1937 Harold obtained *ex parte* a Florida decree of divorce from May. The decree provided, *inter alia*, that Harold pay May $65 a week. In 1939 Harold married Virginia in Connecticut. In 1941 May obtained in New York an uncontested judgment that she was Harold's wife, that the Florida divorce decree was null and void, and that Harold's marriage to Virginia was null and void. In February 1946 Harold and Virginia executed in New Jersey, where they had been living, a separation agreement which provided that Harold pay Virginia $200 a month for her support and that in case of divorce the agreement should be incorporated in the decree as a complete settlement of all alimony

rights. In July 1946 Harold again journeyed to Florida and obtained *ex parte* a decree of divorce from Virginia. The decree recited that the separation agreement had been approved by the court. Three months later Harold married Joyce in New Jersey, where they lived for two years before moving to Connecticut. Then in 1949 Harold agreed orally to increase his monthly payments to May by $15 a week, making them $80 a week. In 1950 Harold and Joyce moved to New York. For completeness we note that in 1961, after the tax years in question, Harold's marriage to Joyce was annulled in New York at her request, without opposition, on the ground that he was still married to May.

During 1957–59 Harold paid $80 a week to May for her support, which she declared as income and upon which she paid taxes. Harold also paid $200 a month to Virginia, which she declared as income and upon which she paid taxes. Harold deducted both alimony payments from his gross income. Finally, Harold and Joyce filed joint returns in which Harold took a dependency deduction for Joyce. The Commissioner and the Tax Court have held that the alimony and dependency deductions were improper because the Florida divorce decree against May had been declared invalid in New York.

As to the alimony, section 71(a) and 215 of the Internal Revenue Code of 1954 (the Code) provide in relevant part that a taxpayer husband may deduct from his gross income periodic payments to his divorced wife if they are "divorced * * * under a decree of divorce" and if the payments are "received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce." In brief, the Commissioner argues that for income tax purposes Harold and May are in no sense divorced and payments to her cannot be deemed in discharge of an obligation imposed under an instrument "incident" to

a divorce. The same applies, it is argued, to Virginia. Moreover, as to her, it is said that because Harold was never divorced from May he could not ever be considered as married to Virginia and, consequently, could not be divorced from her. Furthermore, because Harold could not be regarded as having divorced May or Virginia it is contended that he could not be considered as married to Joyce.

All force has been taken from these arguments by the recent decision in Estate of Borax v. Commissioner of Internal Revenue, 349 F.2d 666 (2d Cir.1965), the reasoning of which we adopt here. There the taxpayer had obtained *ex parte* in Mexico a divorce from his first wife and had remarried shortly after, both in Mexico and in Connecticut. The new ménage returned to New York, where the old one had been located and where the first wife was still living. She quickly obtained in the New York courts a contested judgment that she was still the taxpayer's legal wife, that the Mexican divorce was invalid, and that the second marriage was also invalid. Prior to the "divorce" the taxpayer had executed a separation agreement which provided that he make payments to the first wife for her support. After the New York judgment, the taxpayer continued to make payments to the first wife but she failed to include them as income to her; indeed she failed even to file a tax return. The taxpayer filed a joint return with his second wife. We held that the divorce did not terminate the obligation to make payments under the terms of the agreement, that the agreement was "incident" to the divorce for the purposes of the Code, and that the divorce was to be given effect for tax purposes, at least so long as it had not been declared invalid by a court of the rendering jurisdiction.

Here there is no question that the obligations to make the payments provided in the agreements were not terminated by the respective divorces. Moreover, there is no question that each agreement was "incident" to the divorce decree in question. While Borax dealt specifically

with the Internal Revenue Code of 1939, the relevant provisions of the 1954 Code are substantially the same.

Here the divorce was decreed not by a foreign country but by a sister state. In Borax the divorcing jurisdiction—Mexico—would be under no obligation, save that flowing from comity, to give effect to the New York judgment declaring the invalidity of the Mexican divorce. Here it does not seem that Florida would be required by the full faith and credit clause of the Constitution to acquiesce in New York's declaration as to the validity *vel non* of the Florida divorce. See, e. g., Colby v. Colby, 78 Nev. 150, 369 P.2d 1019, cert. denied, 371 U.S. 888, 83 S.Ct. 186, 9 L.Ed.2d 122 (1962), 63 Colum.L.Rev. 560 (1963). Therefore the decree had not been drained of all validity. And, there is no indication that New York would treat Harold differently for its comparable tax laws than the Commissioner should for federal tax purposes under Borax. Therefore it cannot really be said that the New York decision as to validity is not given the same effect as it would have in New York when it is considered as having some effect for federal tax purposes.

And, in Borax the wife who received the alimony payments had not reported them as income nor paid any taxes on them. Indeed, a deficiency has been assessed against her for that reason. See 349 F.2d at 669 n. 2. However, neither in Borax nor this case is there any evidence that the various wives' decisions about declaring the alimony as income were made in reliance on the New York decisions declaring the respective divorces invalid. In any case, their reasons for acting as they did should not be controlling.

Finally, in Borax the action declaring the Mexican divorce invalid was contested, whereas here the corresponding action was not. But the question before the Commissioner is whether to give any effect for tax purposes to pieces of paper that say the taxpayer is divorced from a wife with whom he no longer lives and is married to another with whom he does indeed live. One state court's decision, contested or not, that it will not give effect to the papers as far as its law of domestic relations is concerned need not estop the parties to its decision from requesting the Commissioner to give them some effect for tax purposes at least when the jurisdiction that issued the papers has not declared them to be invalid and without effect.

■ For the reasons stated in Borax, which we find controlling, we conclude that Harold properly deducted the alimony payments to May and Virginia which were provided for in the written separation agreements. He also properly filed a joint return with Joyce and properly took a dependency deduction for her.

■ However, as to the deduction of $15 a week paid to May under the 1949 oral agreement, we agree with the Commissioner that it should not be allowed. From all that appears, these payments were voluntary and pursuant to no written agreement; no provision of the Code allows their deduction. Cf. Smith v. Commissioner of Internal Revenue, 168 F.2d 446 (2d Cir.1949); Daine v. Commissioner of Internal Revenue, 168 F.2d 449, 4 A.L.R.2d 248 (2d Cir.1948). But *cf.* Fixler v. Commissioner of Internal Revenue, 25 T.C. 1313 (1956). Compare Newton v. Pedrick, 212 F.2d 357 (2d Cir.1954); Hollander v. Commissioner of Internal Revenue, 248 F.2d 523 (9th Cir.1957). Were there a separation agreement executed in writing after 1954, the result might be different, see Int.Rev.Code of 1954 §§ 71(a) (2), 215; Mavity v. Commissioner of Internal Revenue, 341 F.2d 865 (2d Cir.1965).

Reversed, except as indicated with respect to the $15 a week to May.