**ESTATE of Amy Ann McGinnis SPALDING, Deceased.**

**Charles F. SPALDING, Executor, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 755, Docket 75–4248.

United States Court of Appeals, Second Circuit.

Argued March 18, 1976.

Decided June 18, 1976.

James B. Lewis, New York City (Jose E. Trias, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for petitioner-appellant.

William S. Estabrook, III, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, Attys., Dept. of Justice, Tax Div., Washington, D. C.), for respondent-appellee.

Before MOORE and FEINBERG, Circuit Judges, and WYZANSKI,* District Judge.

MOORE, Circuit Judge:

Estate of Amy Ann McGinnis Spalding, Deceased, Charles F. Spalding, Executor, Petitioner-Appellant, petitions this Court to review a decision of the United States Tax Court, Tannenwald, *J.,* finding a deficiency in estate tax due from petitioner in the amount of $415,121.45. The case was presented to the Tax Court upon a stipulation of facts agreed upon by the parties. The tax in question resulted from the Commissioner's disallowance of a claimed marital estate tax deduction[1] of $1,130,803.55 on the ground that Charles F. Spalding (Charles) and Amy Ann McGinnis Spalding (Amy) were not legally and validly married on the date of her death—hence Charles is not a "surviving spouse", and the estate is precluded from taking the deduction.

It is a curious anomaly of life that the status of holy matrimony should be decided by the taxing agencies of the United

---

* Honorable Charles E. Wyzanski, Jr., United States District Judge for the District of Massachusetts, sitting by designation.

1. The relevant statute is Section 2056(a) of the Internal Revenue Code of 1954.

States; but anomalies are not new to the federal courts. And so here.

Charles and Elizabeth C. Spalding (Elizabeth) were married on May 4, 1945 in Haverford, Pennsylvania. Presumably the laws of Pennsylvania governed their matrimonial status until they moved to Connecticut, where they resided until November 1962, when apparently discord or an amicable agreement to disagree caused Charles to move to New York and Elizabeth to remain in Connecticut. On March 19, 1964, Charles obtained what might be called (at least in those days) an *ex parte* Nevada divorce, albeit Elizabeth was personally served in the State of Vermont. Thus far, only four (4) of our fifty (50) states are potentially involved.

Although living with Charles for reasons best known to them was not a model *modus vivendi,* Elizabeth did not wish to become unmarried—at least by a then-regarded renegade state whose procedural practices, *re* divorce, caused lifted eyebrows in more Victorian jurisdictions. A Justice of the Supreme Court of the State of New York on March 13, 1968, vindicated Elizabeth's matrimonial status—at least so far as New York was concerned. Putting Nevada in its proper place as not being "a Court of competent jurisdiction" according to New York standards, the Justice declared that, since 1945, Elizabeth was and is (but omitting the "and ever shall be") the lawful wife of Charles.

But court decrees (try as they will) cannot extinguish normal natural instincts and on May 11, 1968, Charles and Amy were married in California and thereupon became Mr. and Mrs. Charles Spalding. There is no issue raised as to any defect in the California marriage, such as no license obtained, no minister or clerk officiating, or no required fees paid. To the contrary, a certificate of marriage was issued.

Mr. and Mrs. Spalding continued to live in Hillsborough, California in a judicially-assumed reasonably happy state until interrupted by Amy's death on December 18, 1969, leaving a will wherein she expressed her wishes with respect to after-death disposition of her property—wishes which the courts throughout the ages, possibly out of respect for the dead, have professedly striven to honor.

As a lawful resident of California, Amy's will was duly probated on January 8, 1970 by the Superior Court of the State of California for the County of San Mateo. In her will, Amy devised her interest in their residence (California is a community property State), other articles and a portion of her residuary estate to Charles pursuant to a marital deduction provision.

All would have gone well and the California courts would have supervised the estate probably through to an accounting, but for the entry of the Commissioner of Internal Revenue into the picture. Somehow or other he had learned about the views of that New York judge with respect to Nevada divorces, and in complete disregard of the California situation, Amy's belief that she had a husband and the standing that Mr. and Mrs. Spalding must have had with friends and neighbors in the community, decreed, in effect, that Amy and Charles were living in sin and that Charles was not a "spouse" at all. The Commissioner concluded, not surprisingly, that the marital deduction claimed by the estate should be disallowed.

The Tax Court upheld the disallowance largely upon its consideration of § 2056(a) of the Internal Revenue Code of 1954 and the Tax Court's decision in two recent cases before it, *Estate of Wesley A. Steffke,* 64 T.C. 530, July 8, 1975, now on appeal to the Seventh Circuit, and *Estate of Leo J. Goldwater,* 64 T.C. 540, July 8, 1975, now on appeal to this Circuit. According to the Tax Court, *Goldwater* and *Steffke* held that, where a prior divorce had been ruled invalid by *a court of the state where the decedents estate was being administered,* the "surviving spouse" requirement of § 2056(a) was not satisfied. Purporting to following this precedent, the Tax Court specifically rejected the applicability of two cases in this Circuit, *Borax' Estate v. Commissioner,* 349 F.2d 666 (2 Cir. 1965), *cert. denied,* 383 U.S. 935, 86 S.Ct. 1064, 15

L.Ed.2d 852 (1966) and *Wondsel v. Commissioner,* 350 F.2d 339 (2 Cir. 1965), *cert. denied,* 383 U.S. 935, 86 S.Ct. 1064, 15 L.Ed.2d 852 (1966).

The fact that California, the state of both the matrimony and the administration of the estate, had taken no action to invalidate the marriage of its citizens or to annul the marriage certificate issued in California, to the Tax Court did not constitute a "material distinction". Instead, that court chose to give constitutional sanctity to a decree of the lowest court of original jurisdiction in a State (New York) which had not been the State of the original marriage. However, the Tax Court came to the conclusion that California would have been required to surrender its jurisdiction over the persons and property of its own citizens and yield to a Justice of the New York Supreme Court for Westchester County—hence, Mr. and Mrs. Spalding were not lawfully husband and wife.

Thus, the courts have to face a conundrum of their own creation, *i. e.,* when is a spouse not a spouse. If the views of the Commissioner are accepted, by the signature of a judge of a court of original jurisdiction to a decree in New York, Charles will remain shackled to Elizabeth for the rest of his life and California would be powerless to view it otherwise. But, query, whether California, the State of residence, the state of the marriage and the state of the probate, is so powerless? And, again, if Charles and Amy had been forty years younger and had had offspring, would the Commissioner have the power to brand them as illegitimate?

Fortunately—or more likely unfortunately—cases somewhat analogous are on the books. The slate is by no means clean. In this Circuit thus far are two decisions which on their own particular facts have attempted to achieve a degree of practical justice out of matrimonial tax difficulties. *Borax, supra* and *Wondsel, supra.* In *Borax* and *Wondsel,* this Court, in an income tax setting, applied a "rule of validity" to a remarriage which was followed by a judicial declaration of the invalidity of one of the spouses' prior divorces, with the consequence that payment by the husband to the first wife under a separation agreement were found to be "incident to \* \* \* [a] divorce", within the meaning of § 71 of the Internal Revenue Code of 1954 (26 U.S.C.), and therefore deductible by the husband. We also held that since the divorce was valid, the subsequent marriage was also valid, for income tax purposes, so that the man and woman were "husband and wife," and entitled to file joint income tax returns, and claim dependency exemptions.

Both decisions have been criticized by professional scholars and the Commissioner says that he will pay no attention to them. The line of attack seems to be the rather wooden one that if some state decrees a divorce obtained in some other jurisdiction to be invalid, no state thereafter is free to exercise its own standards and judgment with respect thereto.

The Commissioner's attitude in this case is quite realistic. He says (in the Commissioner's Brief, p. 33): "In the context of the federal estate tax law, it is probably impossible to reach an equitable rule which will unquestionably comply with all jurisdictions' attitudes towards the validity of a particular marital state." (Very probably true but we can try in this particular instance.) The Commissioner then proceeds to say (quite accurately) "that generally the law of the decedent's domicile [here California], towards the validity of the marriage will prevail" and that this "is a sound and expedient solution to the many factual variations which may occur . . . .".

The Commissioner looks only at Charles and the New York proceedings as to him. But for tax purposes, he should look at Amy. It is her property and her tax with which he is dealing. Charles, despite New York's opinion vis-a-vis the Charles-Elizabeth relationship, was Amy's husband. If he were not, this status should be decreed by the Courts of California where the marriage took place, where they lived as husband and wife, where Amy had her property, and where she died. Elizabeth was no part of this picture. If she has any rights

in Pennsylvania, Connecticut, New York, Nevada, California or Vermont, they may be asserted there but on another day. We are not concerned with joint income tax returns, payments of alimony or even multi-state divorces. Our only concern is whether at the time of Amy's death Charles was her spouse. Nor are we concerned with the hypothetical multi-spouse situations envisioned by the Commissioner. We are not faced with problems possibly presented in polygamous countries, albeit our many monogamous seriatim marriages may be akin thereto.

As for *Borax* and *Wondsel, supra,* we take no pride in previous decisions if the principles formulated therein lead to an unjust result in the case before us; nor do we stubbornly adhere to the doctrine of "stare decisis" if there be no justification therefor. But far transcending the tax importance of this case (governments, state and federal will receive their fair share regardless of the decision) is our unwillingness on this record to assume the responsibility for declaring that Charles and Amy were not husband and wife in California. Very possibly there might be some merit to the words of Judge (now Mr. Justice) Marshall, writing for this Court in *Borax*:

> "[B]y depriving the determination of invalidity of any federal tax significance the rule of validation avoids a measure of unevenness and uncertainty: all those tax payers who have obtained a divorce in a particular jurisdiction are treated the same, regardless of whether the spouse against whom the decree has been obtained is able to, and does, invoke the power of another jurisdiction to declare that divorce invalid." 349 F.2d at 670.

By this principle, as taxpayers argue, "the living marriage and not the atrophied one is recognized." (Appellant's Reply Brief, p. 11). Such a rule will also avoid such problems as may arise where states had widely disparate codes of morals as to divorce and the grounds therefor (see *Steffke, supra*). The law respecting divorce has changed radically over the years. Procedures, too, have changed, and long arms reach out to

jurisdictional lengths never previously imagined. If California and/or the Ninth Circuit have to come to grips with legal problems affecting the Spalding estate, this will more properly be their responsibility. For the moment, we are satisfied that Charles and Amy were husband and wife— hence spouses—in the State of California vested with the right of the marital tax deduction benefit appurtenant to that status.

Decision of the Tax Court reversed. On motion of the appellant, and with the consent of the Commissioner, the case is remanded to the Tax Court to consider appellant's claim to a deduction for attorneys' fees.