**ESTATE of Leo J. GOLDWATER, Deceased.**

**Irving D. LIPKOWITZ, and Lee J. Goldwater, Executors, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 867, Docket 75–4277**

United States Court of Appeals, Second Circuit.

Argued May 5, 1976.

Decided June 29, 1976.

there was no official interrogation and no warnings had been given.

Irving D. Lipkowitz, New York City (Lipkowitz & Plaut, Roy Plaut, Peter Jason, New York City, of counsel), for petitioners-appellants.

William S. Estabrook, III, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before HAYS and MULLIGAN, Circuit Judges, and PALMIERI, District Judge.*

MULLIGAN, Circuit Judge:

This appeal presents this court with the problem of determining who is the "surviving spouse" of the decedent Leo J. Goldwater for purposes of the estate-tax marital deduction authorized by the Internal Revenue Code of 1954, 26 U.S.C. § 2056.[1]

The facts have been stipulated and are as follows: On June 20, 1946 Leo married his first wife Gertrude in New York City, where they resided as man and wife until about June 1955.[2] In December 1956 Gertrude was awarded a final decree of separation from Leo by the New York State Supreme Court, New York County. On March 20, 1958, Leo obtained a Mexican decree of divorce from Gertrude, without an appearance by her.

On October 16, 1958, Gertrude commenced an action against Leo in the New York State Supreme Court, based on two causes of action: the first was for a declaratory judgment decreeing the invalidity of the Mexican divorce, and the second sought permanently to enjoin Leo from remarrying, in New York or elsewhere. In addition, Gertrude made a successful motion for a temporary injunction against Leo's remarriage during the pendency of the action. Leo appealed from the granting of the temporary injunction and from the denial of his own cross-motion in the trial court to strike the second cause of action (seeking a permanent injunction against his remarriage). On December 9, 1958, the New York Supreme Court, Appellate Division, First Department issued an opinion reversing the order denying Leo's cross-motion to dismiss the second cause of action, and vacating the temporary injunction against remarriage. *Goldwater v. Goldwater,* 6 A.D.2d 561, 180 N.Y.S.2d 383. The court noted that Leo's "answering affidavit admits the invalidity of his Mexican divorce and asserts that he will not oppose plaintiff's [Gertrude's] action for a declaratory judgment." 180 N.Y. S.2d at 384.

Freed of the injunction against his remarriage, on the very same day that the Appellate Division handed down its decision

* Of the United States District Court, Southern District of New York, sitting by designation.

1. That section reads in pertinent part:
   (a) Allowance of marital deduction.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall . . . be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

2. Both Gertrude and Leo were New York residents from the time of their marriage until the time of his death on February 21, 1968.

Leo married "wife" number two, Lee, in Connecticut. At all times thereafter and up until his death, Leo resided with Lee as man and wife in New York.

Thereafter, on February 17, 1959, the New York Supreme Court issued a declaratory judgment in the action instituted by Gertrude. *Inter alia* it declared and adjudged:

—that the Mexican divorce of Gertrude and Leo "was and is fraudulent, null, void and of no force and effect whatsoever;"

—that the alleged marriage of Leo and Lee was likewise null and void;

—"[t]hat the plaintiff Gertrude B. Goldwater is, and at all times since June 20, 1946 has been, the lawful wife of the defendant Leo J. Goldwater."

The second cause of action (for an injunction against Leo's remarriage) was dismissed. While both Gertrude and Leo appeared in this declaratory judgment action, second wife Lee was never joined as a defendant in that suit. No appeal was ever taken from this declaratory judgment and hence it has become final.

Leo died on February 21, 1968. His last will and testament, dated January 17, 1964, was admitted to probate in the Surrogate's Court, New York County, approximately one month after his demise. That will bequeathed to Lee an interest in property equal to or greater than fifty per cent of the value of the adjusted gross estate.[3]

On April 11, 1968, Gertrude filed a notice to take an elective share of Lee's estate pursuant to N.Y. E.P.T.L. (Estates, Powers and Trusts Law) § 5–1.1 ("Right of election by surviving spouse"). This claim was settled by Leo's executors approximately a year later for the amount of $205,000; the settlement was approved by the Surrogate's Court on April 25, 1969.

The estate-tax return for Leo's estate claimed a full marital deduction of $395,-242.17, representing the fifty percent of the adjusted gross estate which was left to Lee. By notice of deficiency the I.R.S. allowed a marital deduction of only $206,103.26, the amount left to Gertrude,[4] since, according to the I.R.S., "Lee J. Goldwater does not qualify as the surviving spouse within the meaning of Section 2056. . . ." Thus $189,138.91 of the claimed marital deduction was disallowed, resulting in an asserted deficiency in the estate tax of $73,284.86.

Leo's executors petitioned the Tax Court for a review of the claimed deficiency. In an opinion by Judge Irene F. Scott filed on July 8, 1975, which is reported at 64 T.C. 540, that court found in favor of the I.R.S., since it concluded "that Gertrude and not Lee was decedent's 'surviving spouse' within the meaning of section 2056." In so finding the court relied heavily on the New York court's declaratory decision which held that Gertrude, and not Lee, was Leo's lawful spouse.

Pursuant to that opinion the Tax Court found a deficiency of $51,709.19. This appeal followed.

We affirm the decision of the Tax Court. It seems clear that Gertrude and not Lee was Leo's spouse at the time of his death. Leo and Gertrude were married and resided in the State of New York; a New York State court found Leo's subsequent Mexican divorce to be "fraudulent, null, void and of nor force and effect whatsoever," and in fact Leo admitted as much in his affidavit in the proceeding. Although Leo then married Lee in Connecticut, he at all times thereafter resided with her in New York. He died a resident of New York and his will was offered for probate in the New York Surrogate's Court. Under these facts the New York decree must be respected and Gertrude recognized as his surviving spouse.

This court was recently faced with a similar question in *Estate of Spalding v. CIR,* 537 F.2d 666 (2d Cir. 1976), but the facts in

---

**3.** Obviously this was done to qualify for the maximum possible estate-tax marital deduction. 26 U.S.C. § 2056(c)(1).

**4.** The $205,000.00 settlement plus a life insurance policy of $1,103.26 which named Gertrude as beneficiary.

that case are clearly distinguishable from those presented here. In *Spalding*, Charles and Elizabeth were married in Pennsylvania, and thereafter resided in Connecticut until Charles moved to New York leaving Elizabeth in Connecticut. Charles then obtained a Nevada divorce serving Elizabeth in Vermont. The New York Supreme Court then declared that the Nevada divorce was void. Charles thereupon married Amy in California where they continued to reside until Amy's death in that state. Amy's last will and testament was offered for probate in California. We held in *Spalding* that Amy's estate was entitled to the marital deduction since Charles was her "surviving spouse" under section 2056(a). In reaching that conclusion Judge Moore in his opinion pointed out that the Tax Court in making a contrary determination had relied upon its decisions in *Estate of Wesley A. Steffke,* 64 T.C. 530 (1975) (now on appeal in the Seventh Circuit) and *Estate of Leo J. Goldwater,* 64 T.C. 540 (1975) (this appeal). In distinguishing those cases Judge Moore stated that they had held that "where a prior divorce had been ruled invalid by *a court of the state where the decedent's estate was being administered,* the 'surviving spouse' requirement of § 2056(a) was not satisfied." Id. at 667 (emphasis in original). In *Spalding,* as Judge Moore indicated, it was Amy's estate which was being administered and "[i]t is her property and her tax with which he [the Commissioner] is dealing." Id. at 668. Here of course it is Leo's estate which is at issue; it was administered by the State of New York where he was domiciled and where a court of that state had held his divorce and "remarriage" to Lee to be invalid and of no force and effect. We consider that there is no alternative but to follow the law of New York and hold that Gertrude is his "surviving spouse" and that Lee does not qualify as such within the meaning of section 2056.

Appellant argues that our holding in *Estate of Borax v. CIR,* 349 F.2d 666 (2d Cir. 1965) (2–1, Friendly, *C. J.,* dissenting), cert. denied, 383 U.S. 935, 86 S.Ct. 1064, 15 L.Ed.2d 852 (1966), followed in *Wondsel v. CIR,* 350 F.2d 339 (2d Cir. 1965) compels the holding here that Lee must be regarded as Leo's surviving spouse. However, *Borax* was concerned with the provisions of the federal income tax law concerning the deductibility of alimony payments. The court carefully so limited its holding: "We hold, *for purposes of these provisions* [26 U.S.C. §§ 71, 215] of the federal tax statute, and *within the meaning of these provisions,* that for the years in dispute Ruth [the first wife] and Herman were divorced under a decree of divorce. The subsequent declaration of invalidity by a jurisdiction other than the one that decreed the divorce is of no consequence *under these provisions of the tax law."* 349 F.2d at 670 (emphasis added).

The court also noted that the 1954 Tax Code afforded the same tax treatment to support payments where the husband and wife were separated under a written separation agreement, as when they were formally divorced. Hence, "[i]f support payments are includible in the gross income of the wife and deductible by the husband when the parties are voluntarily separated, the same treatment should obtain when the husband and wife are 'divorced' in the sense in which Ruth and Herman were divorced— they ceased living together as husband and wife, they lived separately, and one party had obtained a decree dissolving the marital status, although the other had the decree declared 'invalid' by a court of another jurisdiction." Id. at 670–71.

For estate tax purposes, in determining the surviving spouse, there is no comparable flexibility in the provisions of section 2056. Judge Moore has candidly stated in his opinion in *Spalding* (537 F.2d at 668) that *Borax* and *Wondsel* have been criticized by legal scholars. See, e. g., Spolter, Invalid Divorce Decrees, 24 Tax L. Rev. 163 (1969); Case Note, 40 N.Y.U.L.Rev. 992 (1965). Whether or not *Borax* was properly decided and whether it promotes uniformity or cavalierly ignores local law, is not now in issue. As we have indicated, *Borax* explicitly limits its holding to the income tax

issue there involved and does not purport to set forth a universal rule of tax code construction.

Appellant urges that even if *Borax* is not binding, the New York declaratory judgment is invalid since Lee was an indispensable party who was not joined as a defendant. The New York cases relied upon and those we have discovered are not in point. In all of these cases [5] it appears that the defendant spouse contested the judgment and asserted the validity of the divorce. Here, on the contrary, Leo by affidavit conceded that the Mexican decree he obtained was invalid. The marital relationship subsisting between Leo and Gertrude could only be impugned by a valid divorce and not by a subsequent relationship between Leo and Lee. See *Somberg v. Somberg*, 263 N.Y. 1, 188 N.E. 137 (1933). There is nothing in the record before us to give any basis for questioning the finding of the New York court that the Mexican divorce decree was a nullity. If Leo conceded this in the New York action, we cannot imagine what contribution Lee could have made to that litigation. We have not yet reached the stage where a subsequent "marriage" destroys the marital rights of the first wife without an intervening valid dissolution of the marital status.

We therefore affirm the decision of the Tax Court.

**5.** E. g., *Cominos v. Cominos*, 23 A.D.2d 769, 258 N.Y.S.2d 545 (2d Dep't), appeal dismissed, 16 N.Y.2d 1074, 266 N.Y.S.2d 393, 213 N.E.2d 687 (1965); *Bard v. Bard*, 16 A.D.2d 801, 228 N.Y.S.2d 294 (2d Dep't 1962); *Varrichio v. Varrichio*, 269 App.Div. 678, 53 N.Y.S.2d 326 (2d Dep't), leave to appeal to the Court of Appeals denied, 299 App.Div. 851, 56 N.Y.S.2d 527 (2d Dep't 1945); *Lauricella v. Lauricella*, 14 Misc.2d 625, 178 N.Y.S.2d 561 (Sup. Ct. 1958).