ESTATE OF WESLEY A. STEFFKE, DECEASED, WISCONSIN
VALLEY TRUST COMPANY AND PRISCILLA BAKER LANE
STEFFKE, CO-EXECUTORS, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 4834-73.    Filed July 8, 1975.

*Leonard F. Schmitt,* for the petitioner.
*Rodney J. Bartlett,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in
the amount of $495,217.27 in petitioner's estate tax. The parties
have settled several issues, and the only one remaining in dispute
is whether, for purposes of the marital deduction, Priscilla Baker
Lane Steffke was the "surviving spouse" of decedent Wesley A.
Steffke, within the meaning of section 2056(a).[1]

All the facts are stipulated.

Wesley A. Steffke (hereinafter decedent) died on November 1,
1968, a resident and domiciliary of the State of Wisconsin.
Wisconsin Valley Trust Co. (hereinafter the trust company) and
Priscilla Baker Lane Steffke are the executors of decedent's
estate. At the time the petition was filed herein, the trust
company had its principal office in Wausau, Wis., and Priscilla
Baker Lane Steffke was a legal resident of the same city. The
executors filed a Federal estate tax return with the District
Director of Internal Revenue at Milwaukee, Wis.

On May 31, 1930, decedent married Dorothy Nickelson
Steffke. In 1964, he obtained a judgment of divorce from her in a
court in the State of Chihuahua, Republic of Mexico. Decedent

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect at the time
of decedent's death, unless otherwise noted.

obtained a second divorce decree in the State of Wisconsin in 1965, dissolving the same marriage.

Priscilla Baker Lane Steffke (hereinafter Priscilla) had married Crockett W. Lane (hereinafter Crockett) on November 11, 1944. The State of Wisconsin was, at all times material hereto, the residence and domicile of both Priscilla and Crockett. Prior to June 9, 1966, while married to Crockett, Priscilla went to Mexico to obtain a divorce from him. She entered a personal appearance in an action for divorce in the First Civil Court of Bravos District (hereinafter the Mexican court), State of Chihuahua, Republic of Mexico. Crockett did not go to Mexico but entered a general appearance through counsel in the divorce proceeding. Priscilla complied with the jurisdictional requirements prescribed by Mexican law. Immediately after her appearance in the Mexican court, she returned to her home in Wisconsin. A judgment of divorce was entered by the Mexican court on June 9, 1966, granting Priscilla a divorce on grounds not recognized under the laws of Wisconsin. This judgment of divorce was never vacated, voided, or set aside by the Mexican court which entered it.

On July 3, 1967, Priscilla and decedent took marriage vows in Marinette County, Wis.

In his last will and testament, executed January 30, 1967, decedent provided that the overwhelming bulk of his estate would pass to his "friend, Priscilla Baker Lane," while most of the rest of the estate was to go to a trust of which his mother was a beneficiary.

By order dated January 17, 1973, the Probate Branch of the Court of Marathon County, State of Wisconsin, determined the identity of decedent's heirs-at-law for purposes of calculating State inheritance tax liability.[2] The order provides, in pertinent part:

2. That PRISCILLA BAKER LANE STEFFKE is found not to be the legal wife and widow of the decedent on the basis of the Court's decision that her divorce in Mexico from her former husband although presumptively valid where granted was not valid and binding in the State of Wisconsin.

On October 29, 1974, the Supreme Court of the State of Wisconsin affirmed the order of the Court of Marathon County,

---

[2] In practical terms, the issue was whether Priscilla's State inheritance tax liability would be computed at the rates applicable to widows or at rates applicable to "strangers" to decedent.

concluding in the final paragraph of its opinion, published as *In re Estate of Steffke,* 65 Wis.2d 199, 222 N.W.2d 628, 633 (1974):

> The Mexican divorce granted to Priscilla Lane in 1966 is of no effect in the State of Wisconsin. She was not the wife of Wesley Steffke under the laws of the State of Wisconsin * * * [3]

In his notice of deficiency, respondent determined that since Priscilla was not decedent's surviving spouse within the meaning of section 2056, decedent's estate was not entitled to a marital deduction claimed on the estate tax return for the property passing to her. To support his determination, respondent relies on the decision of the Supreme Court of Wisconsin holding that Priscilla was not decedent's wife.

Petitioner maintains that on the date of decedent's death, decedent was married to Priscilla, contending that his marital status "for purposes of the federal tax statutes and specifically for purposes of determining the allowance of the marital deduction is controlled by Federal law." Citing *Borax' Estate v. Commissioner,* 349 F.2d 666 (2d Cir. 1965), revg. 40 T.C. 1001 (1963), cert. denied 383 U.S. 935 (1966); *Wondsel v. Commissioner,* 350 F.2d 339 (2d Cir. 1965), affg. in part and revg. in part a Memorandum Opinion of this Court, cert. denied 383 U.S. 935 (1966); and *Feinberg v. Commissioner,* 198 F. 2d 260 (3d Cir. 1952), revg. and remanding 16 T.C. 1485 (1951), petitioner contends that, for Federal tax law purposes, a divorce is valid unless it is declared invalid by the court that granted it. Since Priscilla's divorce was never declared a nullity by the Mexican court, the argument goes, the divorce remains valid for Federal tax purposes, and she was decedent's surviving spouse within the meaning of the marital deduction provisions of section 2056.

---

3 The Wisconsin Supreme Court's opinion was based, in part, upon the provisions of sec. 247.21, Wis. Stat. Ann. (Cum. Supp. 1974), as follows:

247.21 Foreign decrees; comity of states; divorce abroad to circumvent laws

Full faith and credit shall be given in all the courts of this state to a judgment of annulment of marriage, divorce or legal separation by a court of competent jurisdiction in another state, territory or possession of the United States, when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in s. 247.05. Nothing herein contained shall be construed to limit the power of any court to give such effect to a judgment of annulment, divorce or legal separation, by a court of a foreign country as may be justified by the rules of international comity. No person domiciled in this state shall go into another state, territory or country for the purpose of obtaining a judgment of annulment, divorce or legal separation for a cause which occurred while the parties resided in this state, or for a cause which is not ground for annulment, divorce or legal separation under the laws of this state and a judgment so obtained shall be of no effect in this state.

The parties have stipulated that Wisconsin was the residence and domicile of both Priscilla and Crockett. That State, therefore, had the dominant interest in the marital status of decedent and Priscilla. 2 Restatement, Conflict of Laws 2d, sec. 285. The judgment of the Supreme Court of that State, holding that Priscilla was not the wife of decedent, is entitled to full faith and credit. *Sutton v. Leib,* 342 U.S. 402, 409 (1952); *Williams v. North Carolina,* 325 U.S. 226, 227-230 (1945); *Williams v. North Carolina,* 317 U.S. 287, 291-304 (1942). Accordingly, petitioner can prevail in this case only if section 2056 uses the term "surviving spouse" in some special sense which would give validity to Priscilla's Mexican divorce from Crockett and her subsequent marriage to decedent, notwithstanding the Wisconsin Supreme Court decision, thus causing her to be regarded, for the purposes of section 2056, as decedent's surviving spouse.

Section 2056 allows a deduction of an amount equal to the value of any interest in property passing from the decedent to the surviving spouse to the extent (1) such interest is not a terminable one and (2) the value thereof does not exceed 50 percent of the adjusted gross estate. This provision first came into the law as part of the Revenue Act of 1948, ch. 168, 62 Stat. 110, 117. Its basic purpose is to permit spouses to pass noncommunity property to their spouses and receive tax advantages comparable to those obtainable under a community property system if they give to the recipient spouse substantially the same property rights as a surviving spouse has or receives in community property. See H. Rept. No. 1274, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 241, 261; S. Rept. No. 1013, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 305; *Northeastern Nat. Bank v. United States,* 387 U.S. 213, 219-221 (1967); *United States v. Stapf,* 375 U.S. 118, 128 (1963).[4]

---

[4] The intimate relationship of sec. 2056 to State law is shown by the following description of the problem to which its predecessor section in the Revenue Act of 1948 was addressed, H. Rept. No. 1274, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 241, 260:

Prior to 1942 the taxation of transfers made by married persons depended upon the property law of the State in which the transfer took place. In community-property States only half of the community property belonged to one spouse. Hence only half could pass at his death, and only half could be subjected to the estate tax. * * * the consequence was a substantially lower tax on transfers in community-property States than on transfers of similar size in common-law States.

In 1942 the Congress attempted to produce more nearly equal results. Amendments were passed which provided that in community-property States the entire community property was to be treated as the estate of the first spouse to die, except such portion as could be shown to have been received "as compensation for personal services actually rendered" by

Section 2056 does not contain any special definition of the term "surviving spouse." Its meaning, of necessity, depends upon the marital status of the decedent, and there is no body of Federal law from which the marital status of a decedent or his survivor can be ascertained. Marriage, its existence and dissolution, is particularly within the province of the States. *Marriner S. Eccles,* 19 T.C. 1049, 1051 (1953), affd. per curiam 208 F.2d 796 (4th Cir. 1953); *Ruth Borax,* 40 T.C. 1001, 1007 (1963), revd. on other grounds 349 F.2d 666 (2d Cir. 1965), cert. denied 383 U.S. 935 (1966); *Albert Gersten,* 28 T.C. 756, 770 (1957), affd. on this issue 267 F.2d 195 (9th Cir. 1959).

Petitioner is undoubtedly correct, however, in its position that, for tax purposes, the meaning of the term "surviving spouse" as used in section 2056 is a Federal question. State law may control the meaning of a term in a Federal taxing statute "only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law." *Lyeth v. Hoey,* 305 U.S. 188, 194 (1938); *United States v. Pelzer,* 312 U.S. 399, 402-403 (1941); *Burnet v. Harmel,* 287 U.S. 103, 110 (1932).

Even though the section contains no express language on the subject, we think the "necessary implication" of section 2056, read as a whole,[5] is that the identification of a decedent's surviving spouse depends upon local law. The entire section is intimately related to the law of the State where the decedent's estate is administered and, in certain instances, the State where his property is located. The legal interests[6] for which the deduction is allowable depend upon local law, *Eggleston v. Dudley,* 257 F.2d 398, 400 (3d Cir. 1958), and an analysis of the

the surviving spouse, or derived originally from such compensation, or from the separate property of the surviving spouse. * * *
   * * *
   Unfortunately, the 1942 amendments did not produce complete geographical equalization. Cases exist in which transfers of community property are taxed more heavily than transfers under common law. Conversely, there are instances in which transfers in the common-law States are taxed more heavily.
   [5] The legislative intent is to be drawn from the whole statute so that a consistent interpretation may be reached and no part will perish or be allowed to defeat another. *Hellmich v. Hellman,* 276 U.S. 233, 237 (1928); *United States v. Merchants Nat. Trust & Savings Bank,* 101 F.2d 399, 404 (9th Cir. 1939); *Larkin v. United States,* 78 F.2d 951, 954 (8th Cir. 1935).
   [6] A classic statement of the relationship generally of State law to the estate tax is found in *Morgan v. Commissioner,* 309 U.S. 78, 80 (1940), and is as follows: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."

section shows that where a State Supreme Court decision has adjudged the decedent's marital status the "necessary implication" is that the deduction is to be allowed only with respect to interests received by the person identified in that judgment as the decedent's spouse.

Thus, the marital deduction is allowed by section 2056(a) only with respect to the value of "any interest in property which passes or has passed from the decedent to his surviving spouse." Subsection (e) of section 2056 provides that "an interest in property shall be considered as passing from the decedent to any person if and only if" it passes in certain defined ways. Paragraph (2) of that subsection lists an interest which is "inherited by such person from the decedent." The right of inheritance by one who is the surviving spouse of the decedent is governed by intestate succession statutes of the several States, including Wisconsin.[7] The "choices reflected by the intestate succession statute[s] are choices which it is within the power of the State to make," *Labine v. Vincent,* 401 U.S. 532, 537 (1971).

A special form of inheritance by a surviving spouse is a homestead interest. Where property is set apart by operation of law as the property of the surviving spouse and is exempt from execution to liquidate her husband's debts in her hands, it may qualify for the marital deduction. Cf. Rev. Rul. 55-419, 1955-1 C.B. 458. However, if the homestead interest is a terminable one, it does not so qualify. *United States v. Hiles,* 318 F.2d 56, 60 (5th Cir. 1963).[8]

Also, section 2056(a) has been interpreted to include allowances provided by State law for the support of a widow

---

[7] Sec. 852.01, Wis. Stat. Ann. (1971), is, in part, as follows:

852.01 Basic rules for intestate succession

(1) Who are heirs. The net estate of a decedent which he has not disposed of by will, whether he dies without a will, or with a will which does not completely dispose of his estate, passes to his surviving heirs as follows:

(a) To the spouse:

1. If there are no surviving issue of the decedent, the entire estate;

2. If there are surviving issue all of whom are issue of the surviving spouse also, the first $25,000 (reduced, in case of partial intestacy, by any amount given the spouse by the will) plus one-half of the balance if there is only one surviving child and no surviving issue of a deceased child, or if only the issue of one deceased child survives, but one-third of the balance in other cases; * * *

[8] The current homestead provision in Wis. Stat. Ann. (1971) is, in part, as follows:

852.09 Assignment of home as part of share of surviving spouse

(1) If the intestate estate includes an interest in a home, the interest of the decedent is assigned to the surviving spouse as part of his or her share under s. 852.01 unless the surviving spouse files with the court at or before the hearing on the final account a written request that the home not be so assigned. * * *

during the settlement of her husband's estate. If the allowance under the particular statute is a terminable interest, it does not qualify for the deduction. *Jackson v. United States,* 376 U.S. 503, 506 (1964). However, if the widow is absolutely entitled to the allowance and it will not abate upon her death or remarriage, it may qualify for the marital deduction. *Estate of Green v. United States,* 441 F.2d 303, 307-308 (6th Cir. 1971) (Michigan law); *Estate of Oliver B. Avery,* 40 T.C. 392, 400-401 (1963) (Missouri law); cf. *Bookwalter v. Phelps,* 325 F.2d 186 (8th Cir. 1963) (Missouri law).[9]

Paragraph (3) of section 2056(e) provides that an interest in property is considered as passing from the decedent to the surviving spouse if "such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent." The right to dower or curtesy (or statutory interest in lieu thereof) depends upon State law,[10] and Wisconsin, like most other States, has its own special provision.[11] Whether such interest is includable in the marital deduction depends upon whether the surviving spouse receives an absolute interest which vests in her (or him) or receives a terminable interest, such as a life estate, and the nature of her (or his)

---

[9] The provision in the Wis. Stat. Ann. (1971) for an allowance for the surviving spouse is, in part, as follows:

861.31 Allowance to family during administration

(1) The court may, without notice or on such notice as the court directs, order payment by the personal representative or special administrator of an allowance as it determines necessary or appropriate for the support of the surviving spouse and any minor children during the administration of the estate. * * *

A prior version of this statute was held not to qualify the allowance for the marital deduction. *Wiener's Estate v. United States,* 235 F.Supp. 919 (E.D. Wis. 1964).

[10] In *United States v. Crosby,* 257 F.2d 515 (5th Cir. 1958), the decedent was domiciled in Florida, where his estate was administered, but he owned some real property located in Alabama. The administrator found it necessary to sell that land to pay the estate's taxes and other debts. The court applied the law of Alabama in defining the nature of the widow's dower interest, holding that the amount which she received for such interest on the sale of the property qualified for the marital deduction. Cf. *Cox v. United States,* 421 F.2d 576, 581 (5th Cir. 1970).

[11] Under the Wisconsin Statutes prior to 1971, a widow was entitled to dower. The inchoate dower right of the wife of any husband dying after Mar. 31, 1971, was abolished and replaced by an elective provision of the Wis. Stat. Ann. (1971), in part as follows:

861.05 Right to elective share; effect of election

(1) If decedent dies testate, the surviving spouse has a right to elect to take the share provided by this section. The elective share consists of one-third of the value of the net probate estate, reduced by the value of any property given outright to the spouse under the decedent's will. * * *

(2) Except as to property applied under sub. (1) to reduce the elective share, an election to take under this section forfeits any other right to take under the will and under the law of intestate succession. * * *

interest depends upon State law. See *United States v. Hiles,* 318 F.2d at 58.[12] Even where the dower interest is a terminable one, the commuted value of its sales proceeds may be deductible, depending upon the nuances of State law. *United States v. Crosby,* 257 F.2d 515, 519 (5th Cir. 1958); see also *Dougherty v. United States,* 292 F.2d 331, 336-337 (6th Cir. 1961); *United States v. Traders National Bank of Kansas City,* 248 F.2d 667 (8th Cir. 1957); cf. *Cox v. United States,* 421 F.2d 576, 582-583 (5th Cir. 1970).

Finally, subsection (c)(1) of section 2056 limits the marital deduction to "50 percent of the value of the adjusted gross estate." Subsection (c)(2)(B) contains a special rule to be followed in computing the 50-percent limitation "If the decedent and his surviving spouse at any time, held property as community property under the law of any State, Territory, or possession of the United States." For purposes of computing the marital deduction, the rule reduces the adjusted gross estate by the following items included therein: the value of the community property held at death, the value of transferred community property, the amount of insurance purchased with premiums paid out of community property, and certain other items. Community property is, of course, a State law concept, and the nature and extent of the community interest depends upon the applicable State law. *Poe v. Seaborn,* 282 U.S. 101, 110 (1930). Property belongs to a marital community only if the parties are husband and wife within the meaning of local law.[13]

---

[12] In *Cox v. United States,* 421 F.2d at 578, the court said: "Mrs. Cox elected to reject the provisions made for her in her husband's will and take her statutory share under Alabama law. The nature of the interests which she received are therefore governed by Alabama law."

[13] Community property laws are applicable in eight States: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington. The statutory definitions of community property differ to some extent, but the definitions in California and Texas are typical:

Cal. Civ. Code Ann. (West 1954):

Sec. 687. Community property defined

Community property. Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either. (Enacted 1872.)

Tex. Fam. Code Ann. (1975):

Sec. 5.01. Marital Property Characterized

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

(b) Community property consists of the property, other than separate property,

All of these provisions defining and circumscribing the marital deduction under section 2056—allowing the deduction on stated conditions for inherited interests, homestead rights, dower or interests in lieu thereof, and support allowances and denying it on stated conditions for described interests in community property— depend for their operation upon the marital status of the decedent and the identity of his surviving spouse under applicable State law. This list of provisions turning on State law does not purport to be complete, but it is sufficient to demonstrate the "necessary implication" that Congress intended, for the purposes of section 2056, that applicable State law should control in determining a decedent's marital status and the identity of his surviving spouse. The language of the Supreme Court in *Helvering v. Stuart*, 317 U.S. 154, 161 (1942), an income tax case involving the taxability of trust distributions, is apposite:

When Congress fixes a tax on the possibility of the revesting of property or the distribution of income, the "necessary implication," we think, is that the possibility is to be determined by the state law. Grantees under deeds, wills and trusts, alike, take according to the rule of the state law. The power to transfer or distribute assets of a trust is essentially a matter of local law. * * *

Similarly, where Congress circumscribes a deduction for property interests passing to a surviving spouse with State law concepts, the "necessary implication" is that the marital status of the decedent and the identity of the surviving spouse depend upon the law which creates those interests. Therefore, in the instant case, the judgment of the Wisconsin Supreme Court is controlling as to decedent's marital status. Priscilla was not his surviving spouse within the meaning of section 2056. Cf. *Ward v. Commissioner*, 224 F.2d 547, 551 (9th Cir. 1955), affg. 20 T.C. 332 (1953); *Estate of Margaret R. Gale*, 35 T.C. 215, 219 (1960).

Any other rule would render section 2056 unworkable. For example, under petitioner's view in the present case, had decedent died intestate no marital deduction would be allowable. Since Priscilla was not decedent's surviving spouse under Wisconsin law, she would have received no inherited property, dower or interests in lieu thereof, support allowances, or homestead rights which might otherwise qualify for the marital deduction. Only due to the fortuitous circumstances that decedent left a will giving the bulk of his estate to Priscilla does

acquired by either spouse during marriage.

petitioner have a basis for contending that the deduction is allowable. The anomalies would multiply if decedent's own Mexican divorce had been declared a nullity and he had not obtained the subsequent divorce under Wisconsin law. In those circumstances, Dorothy Nickelson Steffke would be his surviving spouse under Wisconsin law (unless she had died subsequent to their Mexican divorce or had divorced decedent legally under Wisconsin law), and as such would be eligible to inherit his intestate property, would be entitled to dower or interests in lieu thereof, and might qualify for the family allowance and homestead rights. Yet, if petitioner's position is correct, the marital deduction would be allowable only for the amounts passing to Priscilla.

In reaching the conclusion that, for the purposes of section 2056, Priscilla was not decedent's surviving spouse, we recognize that the appellate court opinions in *Borax' Estate v. Commissioner*, 349 F.2d 666 (2d Cir. 1965); *Wondsel v. Commissioner*, 350 F.2d 339 (2d Cir. 1965); and *Feinberg v. Commissioner*, 198 F.2d 260 (3d Cir. 1952), contain language which may be read to support petitioner's position that since Priscilla's Mexican divorce was not invalidated by the Mexican court, that divorce should be regarded as valid for tax purposes. All three of those cases, however, involved the alimony income tax provisions of sections 71 and 215, with their separate legislative history and purpose, rather than the State-law-related marital deduction issue here presented, and on that ground they are distinguishable. Cf. *Aldrich v. United States*, 346 F.2d 37, 38 (5th Cir. 1965).

*Borax* involved also an issue as to whether the taxpayer whose Mexican divorce was later declared invalid by the Supreme Court of New York, New York County, was entitled, notwithstanding the New York court decree, to file a joint return with his second "wife." The provisions of section 6013, relating to joint returns, like the marital deduction provisions of section 2056, came into the tax law as part of the Revenue Act of 1948, ch. 168, 62 Stat. 110, 115, and were designed to put spouses in common law States on an equal footing with spouses in community property States. However, the marital deduction is more intimately related to State law and, for this reason, we think the joint return portion of the *Borax* opinion is also distinguishable from the instant case. If that distinction is not sound, we respectfully decline to follow the

*Borax* opinion. See and compare *Harold K. Lee,* 64 T.C. 552 (1975), and *Estate of Leo J. Goldwater,* 64 T.C. 540 (1975), filed this day.

To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise noted.