. ESTATE OF LEO J. GOLDWATER, DECEASED, IRVING D. LIPKOWITZ AND LEE J. GOLDWATER, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5864-72.    Filed July 8, 1975.

*Irving D. Lipkowitz, Roy Plaut,* and *Peter Jason,* for the petitioners.

*Kimball K. Ross* and *David N. Brodsky,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined a deficiency in the estate tax of the Estate of Leo J. Goldwater in the amount of $73,284.86. Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for decision whether Lee J. Goldwater is the surviving spouse of Leo J. Goldwater within the meaning of section 2056, I.R.C. 1954.[1]

All of the facts have been stipulated and are found accordingly.

Irving D. Lipkowitz and Lee J. Goldwater are the executors of the Estate of Leo J. Goldwater (hereinafter referred to as the decedent). The address of both executors at the time of the filing of the petition in this case was New York, N.Y. The estate tax return for decedent's estate was filed with the District Director of Internal Revenue in New York, N.Y.

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise noted.

Decedent was married to Gertrude B. Goldwater (hereinafter Gertrude) on June 20, 1946, in New York, N.Y., where they lived together as husband and wife until about June 1955.

From the time of his marriage to Gertrude until the time of his death, decedent and Gertrude were both residents of New York, N.Y., and the sole place of business of decedent was within the city, county, and State of New York.

In December 1956, Gertrude was awarded a final decree of separation from decedent by the Supreme Court of the State of New York, County of New York.

On March 20, 1958, decedent procured a decree of divorce from Gertrude in the State of Tlaxcala, Republic of Mexico. This decree states in part as follows:

JUDGMENT: Apizaco, State of Tlaxcala, March 20th, 1958

Upon consideration of the proceedings in the present divorce action or purpose of final judgment, it appears:

FIRST: The required petition was presented, and having satisfied all legal requisites, the Plaintiff accepted the jurisdiction and authority of this Court, and as prescribed by the Civil Code, complying with the requirements of residence as proven with Certificate Number: 1195784, issued to him by the Department of the Interior; instituted an action for necessary divorce against the Defendant, with the assistance of the duly admitted Attorney by this Court, declaring as grounds for divorce the Incompatibility of Temperaments as prescribed by Article 206, Section VII, of the Civil Code, Chapter of Divorce; that the parties were married in the City of New York, State of New York, United States of America, on June 20th, 1946,—as evidenced in compliance with Law; that there were no issues born from said matrimony; further, also petitioning in the complaint that the Defendant be summoned in compliance with Law, and that upon having satisfied all legal requisites a judgment be entered declaring the aforesaid matrimony dissolved. The complaint was admitted and the Defendant was ordered to be summoned as provided by Law, and the legal term expired without the Defendant having filed an answer. The statements in the complaint were then presumed to have been admitted, and was introduced during the proceedings satisfactory evidence that the Defendant became personally served and was given an opportunity to defend, exhibitting [sic] the affidavit of service duly sworn to that effect, and executed by Deputy Sheriff of the City of New York, County and State of New York, dated March 14th, 1958, in full compliance with Law; * * *
* * *

NOW THEREFORE: Based upon the foregoing and in Articles 560, 561, 564, 566, 567, 571, also 75, and other provisions of the Code of Civil Procedure it is adjudged:

FIRST: The marriage entered into between LEO J. GOLDWATER, and GERTRUDE B. GOLWATER [sic], on June 20th, 1946, in the City of New

York, State of New York, U.S.A. is now legally dissolved leaving both parties free to enter into new nuptials, according to Article 205, of the Civil Code.

On October 16, 1958, Gertrude began an action against decedent in the Supreme Court of the State of New York, County of New York, based upon two causes of action, the first for a declaratory judgment to declare invalid the decree of divorce obtained by decedent in Mexico, and the second to permanently restrain and enjoin decedent from remarrying in New York State or elsewhere. In the prayer of her complaint Gertrude asked that the court restrain decedent from remarrying during the pendency of the action. Decedent made a cross-motion to dismiss the second cause of action in the complaint (seeking a permanent injunction against decedent's remarrying) for legal insufficiency. Gertrude's motion for a temporary injunction was granted and decedent's cross-motion to dismiss the second cause of action was denied by the Special Term of the Supreme Court, New York County, and decedent appealed from both orders to the Appellate Division of the Supreme Court, First Department. On December 9, 1958, the Appellate Division unanimously (1) reversed the order denying decedent's cross-motion and granted such cross-motion to dismiss the second cause of action; and (2) modified the order granting Gertrude's motion for a temporary injunction, denied the motion, and affirmed only such part of the order as had awarded Gertrude counsel fees.

Decedent did not contest Gertrude's first cause of action for a declaratory judgment, and on February 19, 1959, the Supreme Court of the State of New York, County of New York, rendered a declaratory judgment in Gertrude's action which provided:

1. That the alleged divorce procured by the defendant LEO J. GOLDWATER from the plaintiff GERTRUDE B. GOLDWATER, in Tlaxcala, Mexico, on or about March 20, 1958, was and is fraudulent, null, void and of no force and effect whatsoever.

2. That the alleged marriage of the defendant LEO J. GOLDWATER to Mrs. LEE F. JABLOW in December, 1958, in the State of Connecticut, was and is null, void and of no force and effect whatsoever.

3. That the plaintiff GERTRUDE B. GOLDWATER is, and at all times since June 20, 1946 has been, the lawful wife of the defendant LEO J. GOLDWATER.

4. That the defendant LEO J. GOLDWATER and Mrs. LEE F. JABLOW are not and never have been husband and wife.

Lee F. Jablow (Lee) referred to in the decree is Lee J. Goldwater, one of the executors of decedent's estate.

On December 9, 1958, decedent and Lee were purportedly joined in marriage in Connecticut with a justice of the peace officiating. On the certificate of marriage recorded in the State of Connecticut, both decedent's residence and Lee's residence are shown as New York City, N.Y. At all times after December 9, 1958, until decedent's death, decedent and Lee resided together as husband and wife in New York.

Decedent died on February 21, 1968. His last will and testament, dated January 17, 1964, was duly admitted to probate in the Surrogate's Court in New York County, New York, N.Y., on March 19, 1968, and letters testamentary were issued on that date to Lee J. Goldwater and Irving D. Lipkowitz, the petitioners herein who are still qualified and acting as such executors.

In decedent's last will and testament he devised and bequeathed to Lee an interest in property equal to or greater than 50 percent of the value of his adjusted gross estate.

On April 11, 1968, Gertrude served and filed a notice to take an elective share of Leo's estate pursuant to section 5-1.1 of the New York Estates, Powers and Trusts Law.[2] By agreement dated April 4, 1969, between Gertrude and decedent's executors, the petitioners herein, Gertrude's claim was compromised and settled in the amount of $205,000.[3] The agreement was approved by decree of the Surrogate's Court, New York County, New York, N.Y., on April 25, 1969. The sum of $206,103.26 which passed from decedent's estate to Gertrude consisted of this $205,000 together with the proceeds of an insurance policy on decedent's life in the amount of $1,103.26, of which Gertrude was the beneficiary.

The estate tax return for decedent's estate, filed May 20, 1969, showed an estate tax due in the amount of $84,889.74 and this was paid. On this return, a full marital deduction of $395,242.17 representing 50 percent of the adjusted gross estate (as computed

---

[2] This section provides for a "Right of election by surviving spouse" against the will except in specified circumstances, one of which is when in case of wills executed prior to Aug. 31, 1966, the surviving spouse is devised $2,500 and a testamentary trust is created leaving the surviving spouse a life estate in an amount which equals or exceeds the surviving spouse's elective share.

[3] Leo's will contained a provision that if his former wife Gertrude would be entitled to elect as a surviving spouse absent provision for her in his will that he bequeathes to her $2,500 absolutely and establishes a trust of an amount equal to the excess between $2,500 and her intestate share with the income payable to her for life and on her death the principal remaining in the hands of the trustees to become part of the residual estate.

on the return) was claimed on the basis that an amount in excess of this sum was passed to Lee.

Respondent in his notice of deficiency disallowed $189,138.91 of the claimed marital deduction with the explanation that a marital deduction in the amount of $206,103.26, representing the value of the interest in decedent's property which passed to Gertrude was allowable. Respondent in his notice stated "that Lee J. Goldwater does not qualify as the surviving spouse within the meaning of Section 2056."

Section 2056(a),[4] with specified limitations, exempts from estate tax the value of a decedent's adjusted gross estate (not to exceed 50 percent thereof, section 2056(c)(1)) which passes from the decedent to the surviving spouse. This provision of the statute, first enacted in 1948, was intended to "produce approximate geographical equality" in estate tax and to "equate the decedent in the common-law State with the decedent in the community-property State." H. Rept. No. 1274, to accompany H.R. 4790, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 241, 261; S. Rept. No. 1013, to accompany H.R. 4790, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 305.

In a community property State, upon one spouse's death, the surviving spouse has title to one-half of the community property and therefore this one-half is not a part of the deceased's estate subject to estate tax. For this reason the statute, section 2056(c)(2)(B), provides special rules in case of community property which in general effect allow the marital deduction only with respect to the separate property of the decedent passing to the surviving spouse.

Neither the statute nor the regulations define the term "surviving spouse." Except in unusual circumstances a problem will not arise as to the definition of this term. However, in the circumstances present in this case, it is necessary to determine whether Lee is the decedent's surviving spouse, as petitioners contend, or Gertrude is decedent's surviving spouse, as respondent contended.

---

[4] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

Respondent relies on the judgment of the New York Supreme Court, holding the Mexican divorce obtained by decedent null and void and that Gertrude is and at all times since their marriage has been the lawful wife of decedent in support of his position. Apparently, petitioner does not contend that under the holding of the New York court, Lee rather than Gertrude was decedent's legal wife at the time of his death but rather contends that under the holding of the United States Court of Appeals for the Second Circuit, to which an appeal in this case would lie, *Borax' Estate v. Commissioner*, 349 F. 2d 666 (2d Cir. 1965), revg. 40 T.C. 1001 (1963), cert. denied 383 U.S. 935 (1966); and *Wondsel v. Commissioner*, 350 F. 2d 339 (2d Cir. 1965), revg. on this issue a Memorandum Opinion of this Court, cert. denied 383 U.S. 935 (1966), the determination of marital status for Federal tax purposes is not controlled by a decision with respect to that status by a court of the State in which the parties reside or are domiciled.

Petitioners argue that under our holding in *Jack E. Golsen*, 54 T.C. 742 (1970), the *Borax* and *Wondsel* cases control the result which should be reached in this case. However, petitioners suggest in their argument that Gertrude's declaratory judgment is of "questionable validity" since Lee was not joined as a party.

In our view there is no question that under New York law the declaratory judgment obtained by Gertrude is a valid judgment that the divorce obtained by the decedent in Mexico is null and void and Gertrude is the decedent's lawful wife. However, since a question has been raised by petitioners as to this judgment, we will discuss this suggested or intimated point of petitioners before proceeding to discuss the issues primarily argued by the parties in this case.

The New York law is clear that where an action for a declaratory judgment as to marital status is commenced after the purported remarriage of one party, that party's purported husband or wife is an indispensable party. *Williams v. Williams*, 17 App. Div. 2d 958, 234 N.Y.S. 2d 103, 105 (2d Dept. 1962), and cases there cited. However, where prior to the purported remarriage the party defendant in the declaratory judgment action has admitted the invalidity of the purported divorce he obtained and asserted that he would not oppose the action for a declaratory judgment, as had decedent here, the substantive issue is disposed of prior to any purported remarriage of that party, and no trial of

the substantive issue is required. Since there was no trial to be held because of decedent's concessions at the December 9, 1958, hearing, Lee was not an indispensable party, the marriage ceremony between her and decedent not having taken place when the December 9, 1958, opinion setting forth decedent's concessions was rendered. See *Bard v. Bard,* 16 App. Div. 2d 801, 228 N.Y.S. 2d 294 (2d Dept. 1962). The opinion of the court in *Goldwater v. Goldwater,* 6 App. Div. 2d 561, 180 N.Y.S. 2d 383 (1st Dept. 1958), which was entered on December 9, 1958, and formed the basis for the orders entered that day reversing the orders of the trial court temporarily enjoining decedent's remarriage and refusing to dismiss Gertrude's action for a permanent injunction against his remarrying specifically stated (p. 384): "Defendant's answering affidavit admits the invalidity of his Mexican divorce and asserts that he will not oppose plaintiff's action for a declaratory judgment." At a minimum under these circumstances the decree entered by the New York court is presumptively valid. See *Williams v. Williams, supra* at 103-104. On the facts here we conclude that the decree of the New York court establishes that decedent and Gertrude were under New York law husband and wife at the date of decedent's death. In circumstances similar to those here present, the New York courts have held the wife from whom the husband obtained an invalid divorce to be entitled to elect to take as surviving spouse under the New York Statutes. *In re Deckert's Will,* 141 N.Y.S. 2d 855 (King's County Surr. Ct. 1955).

In the case of *In re Will of Bock,* 70 Misc. 2d 470, 333 N.Y.S. 2d 801 (Erie County Surr. Ct. 1972), the court stated in part (pp. 802-803):

Subdivision (a)(1) of sec. 5-1.2 of the Estates Powers and Trusts Law (Disqualification as Surviving Spouse) provides, inter alia, that a surviving spouse is disqualified from exercising her right of election as provided in sec. 5-1.1 of the Estates Powers and Trusts Law where "a final decree or judgment of divorce, * * * recognized as valid under the law of this state, was in effect when the deceased spouse died."

Clearly this section grants to the divorced spouse the right to contest the validity of such decree. The Surrogate is given jurisdiction to determine whether a divorce decree "recognized as valid under the law of this state, was in effect when the deceased spouse died." It is by reason of this jurisdiction that a divorced spouse must be cited in a probate proceeding. The rights accorded her under the above section must be protected.

If Gertrude had not previously obtained a judgment declaring decedent's Mexican divorce invalid and that she was his wife, she could have attacked the validity of the divorce decedent obtained in Mexico in the probate proceeding. However, where the in-validity of the divorce had, as here, been previously established by a declaratory judgment such an attack in the probate proceeding was unnecessary. Under New York law there was no divorce "recognized as valid" when decedent died.

While neither party suggests that under the facts of this case we need look to the law of any State other than New York, where both Gertrude and decedent were domiciled from the time of their marriage to the date of decedent's death, we point out that the judgment of the New York court would be entitled to full faith and credit in other States. *Sutton v. Leib,* 342 U.S. 402 (1952).

We turn now to the issue of whether having determined that Gertrude was decedent's wife under New York law (which under the full faith and credit clause of the constitution would be accepted in other States) at the date of decedent's death we should conclude that she is his "surviving spouse" under section 2056 and, if in our view such is the proper interpretation of section 2056, whether the *Golsen* holding requires that we conclude under the *Borax* and *Wondsel* decisions of the Second Circuit that Lee is decedent's "surviving spouse" under section 2056.

Since section 2056 was enacted "to equate the decedent in the common-law State with the decedent in the community-property State," it seems to be clear that the congressional intent was to look to State law to determine who is a decedent's surviving spouse under section 2056 at the date of his death. We recognize that a determination of the meaning of the words "surviving spouse" as used in section 2056 is a question of construction of a Federal statute and not of State law. *Lyeth v. Hoey,* 305 U.S. 188 (1938). However, in construing the meaning of the statute we must determine whether the congressional intent was that "surviving spouse" as used in section 2056 refers to the surviving spouse at the date of decedent's death under State law. Numerous cases have looked to State law to determine other questions arising under section 2056 such as whether a release executed by a widow is valid, see *Commissioner v. Estate of Bosch,* 387 U.S. 456, 463 (1967), or whether the interest passing to decedent's

widow is a terminable interest under section 2056(b). See *In re Estate of Fried*, 445 F. 2d 979 (2d Cir. 1971), affg. 54 T.C. 805 (1970).

In our view, Gertrude and not Lee was decedent's "surviving spouse" within the meaning of section 2056. Gertrude's suit which was settled for $205,000 was for her elective share of decedent's estate as his widow. The settlement of the suit was an amount she received as decedent's widow or "surviving spouse" within the meaning of section 2056. See *Lyeth v. Hoey, supra.*

Petitioners argue that irrespective of our view of whether Gertrude or Lee is decedent's "surviving spouse" under section 2056, the issue is identical to the determination made by the Second Circuit in *Borax* and *Wondsel,* and under those decisions we are required to conclude in this case that Lee is the surviving spouse. *Jack E. Golsen, supra.*

In *Ruth Borax*, 40 T.C. 1001, 1007 (1963), revd. in *Borax' Estate v. Commissioner, supra,* in construing whether certain payments made under a separation agreement were includable in the wife's income and deductible by the husband as payments incident to a divorce, we stated in part:

> We recognize and are fully in accord with the principle that the Federal law will control when there is a question of the construction of a Federal statute, *Lyeth* v. *Hoey*, 305 U.S. 188 (1938), and that Federal tax statutes are not to be frustrated by State laws, *Commissioner* v. *Tower,* 327 U.S. 280 (1946). But here we do not look to State law to construe the Federal statute. The statute, as interpreted by the Federal courts, requires that the written instrument be incident to the decree of divorce or, in this case, the status of divorce. There being no body of Federal law from which we can determine whether the status of divorce existed, we must look elsewhere. This Court has often held that where the language of a Federal tax statute depends on the marriage status we will look to State law for that purpose. Marriage, its existence and dissolution, is particularly within the province of the States. *Marriner S. Eccles*, 19 T.C. 1049 (1953), affirmed per curiam 208 F. 2d 796 (C.A. 4, 1953); *Albert Gersten*, 28 T.C. 756 (1957), affirmed on this issue 267 F. 2d 195 (C.A. 9, 1959); *John J. Untermann*, 38 T.C. 93 (1962). The reason for looking to State law here is to aid in determining the status of divorce as required by the Federal statute; and we cannot see that doing so frustrates any tax policy of the Congress in this situation.

The Second Circuit, in reversing, concluded (349 F. 2d at 670):

> We hold, for purposes of these provisions of the federal tax statute, and within the meaning of these provisions, that for the years in dispute * * * [taxpayer] and Herman were divorced under a decree of divorce. The subsequent declaration of invalidity by a jurisdiction other than the one that decreed the

divorce is of no consequence *under these provisions of the tax law.* [Emphasis supplied.]

The Second Circuit explained its conclusions as follows (pp. 670-671):

This rule of validation tends to promote some measure of certainty and uniformity—important goals of the federal tax scheme; see Commissioner v. Lester, 366 U.S. 299, 301, 81 S.Ct. 1343, 1345, 6 L.Ed.2d 306 (1961), declaring "that it was the intention of Congress, in enacting sec. 22(k) and sec. 23(u) of the [1939] Code, to eliminate the uncertain and inconsistent tax consequences resulting from the many variations in state law."

\* \* \*

This interest in uniformity might not by itself justify a rule of validation, but there is an additional factor. The rule tends to further the "indicated congressional policy of placing the tax burden of all general marriage settlement payments on the party entitled to their enjoyment," Lerner v. Commissioner, 195 F.2d 296, 298 (2 Cir. 1952), and it does so without interfering with any other congressional tax policy. The requirement that the marital relationship be dissolved by a judicial decree of divorce (or legal separation) as opposed to being dissolved by having the parties cease living together as husband and wife is not expressive of any significant policy. This was amply revealed in 1954 when Congress afforded the same tax treatment to support payments where the husband and wife are voluntarily separated and there is a written separation agreement. See generally Mavity v. Commissioner, 341 F.2d 865, 870 (2d Cir. 1965). If support payments are includible in the gross income of the wife and deductible by the husband when the parties are voluntarily separated, the same treatment should obtain when the husband and wife are "divorced" in the sense in which \* \* \* [taxpayer] and Herman were divorced—they ceased living together as husband and wife, they lived separately, and one party had obtained a decree dissolving the marital status, although the other had the decree declared "invalid" by a court of another jurisdiction.

In our view the policy considerations which led the Second Circuit to conclude for the purpose of the alimony provisions of the Revenue Code that a Mexican divorce which had been declared invalid in New York should be recognized are not applicable to the construction of the term "surviving spouse" under section 2056. The underlying concept of the *Borax* case that where parties to a marriage are separated the tax burden should be on the party entitled to the "enjoyment of the payments" has no application to section 2056.

The policy considerations underlying the enactment of section 2056 were totally different from those considered by the Second Circuit to underlie the enactment of the alimony provisions. The provisions of section 2056 are by necessary implication dependent upon the law of the State in which the decedent's

estate is being administered. The question which often arises under section 2056 of the nature of the interest passing to the surviving spouse is resolved by applying the appropriate State law. *Commissioner v. Estate of Bosch, supra.* The law of many States grants specific property rights such as dower or curtesy to the "surviving spouse" of a decedent. In New York, as well as many other States, a "surviving spouse" may elect to take against a will. In a community property State the State law controls who is the spouse who owns one-half of the community property when the other spouse dies. If we determine who is the "surviving spouse" under section 2056 other than by looking to State law, we frustrate the intent of Congress to "equate the decedent in the common-law State with the decedent in the community-property State." In our view the congressional intent in enacting section 2056 was that the term "surviving spouse" refers to the same person who is the surviving spouse under the law of the State in which the decedent's estate is being administered. Such a construction promotes uniformity in the administration of the estate tax law by considering as the "surviving spouse" in all States the person who will inherit as the "surviving spouse." For the determination of the nature of property rights inherited by the "surviving spouse" we must look to State law, and to consider a different person to be the "surviving spouse" for purposes of section 2056 than is considered the "surviving spouse" under State law would result in confusion as to the nature of the property interest inherited by the surviving spouse. The considerations underlying the enactment of section 2056 differ substantially from those underlying the enactment of the "alimony" provisions as set forth in the opinion of the Second Circuit in the *Borax* case. The rationale of the *Borax* case, the promotion of uniformity in the administration of the taxing statutes, is accomplished under section 2056 by looking to State law to determine who is the "surviving spouse."

We are aware that the *Borax* case also dealt with the right of the taxpayer and the person he contended was his "wife" to file a joint return. In concluding that a joint return was permissible the Second Circuit did not discuss the legislative history of the joint return provisions but rather in support of its conclusion stated (349 F. 2d at 675):

The Commissioner insists that for purposes of filing joint returns marital status must be determined in accordance with the law of the state of domicile,

and that Herman and Hermine were not entitled to file a joint return because a court in the state of their domicile for the years in dispute, New York, had declared them not to be husband and wife. While there is much to be said against a rule resolving all conflicts in marital status in terms of the domicile of the parties, since it would attach important tax consequences to changing a home from state to state, and although the Commissioner has on occasion taken a contrary position, see Rev. Rul. 58-66, 1958 1-2 Cum. Bull. 60 (common law marriages), we do not pass on that broader issue here. The New York declaration of invalidity of the marriage between Herman and Hermine was predicated solely on the view that the Mexican divorce by Herman and Ruth was invalid; and it would make little sense for us to recognize the Mexican divorce for the purposes we did, and at the same time recognize a judgment which was predicated on a refusal to recognize that divorce. Cf. S.Rep. No. 1013, 80th Cong., 2d Sess. [1948], 2 U.S. Code Cong. & Ad. News, p. 1212, declaring that "a uniform construction" of all the provisions dealing with the determination of marital status, including those related to joint returns and "alimony and like payments," is intended.

From the above quotation we conclude that the *Borax* case in dealing with the joint return issue did not pass on an issue which is "squarely in point" with the issue here presented as to the meaning of the term "surviving spouse" as used in section 2056. The *Wondsel* case in the Second Circuit relied on the *Borax* case and contains no independent discussion of the legislative intent underlying the "alimony" and "joint return" provisions of the Revenue Code.

In our view since the decisions of the Second Circuit in the *Borax* and *Wondsel* cases are not "squarely in point" with the issue in the instant case, they are not controlling in this case. See and compare *Estate of Wesley A. Steffke,* 64 T.C. 530 (1975), and *Harold K. Lee,* 64 T.C. 552 (1975), filed this day. In this case we conclude that Gertrude and not Lee was decedent's "surviving spouse" within the meaning of section 2056 and therefore sustain respondent's determination that the marital deduction available to decedent's estate is the $206,103.26 which passed from the estate to Gertrude.

Because of the issues disposed of by the parties,

*Decision will be entered under Rule 155.*

Reviewed by the Court.