WILLIAM R. (BOB) WILSON and LINDA F. WILSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 7199-70.
United States Tax Court
T.C. Memo 1976-285; 1976 Tax Ct. Memo LEXIS 119; 35 T.C.M. (CCH) 1276; T.C.M. (RIA) 760285; September 8, 1976, Filed John H. Doyle, III, and Howard N. Beldock, for the petitioner Linda F. Wilson. David N. Brodsky, for the respondent. FAY
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: The instant proceeding results from the reversal and remand by the Second Circuit Court of Appeals of an order of this Court denying the motions of petitioner Linda F. Wilson to vacate our prior decision and reopen proceedings in the above-captioned case. Respondent determined deficiencies in the joint Federal income tax liability of William R. (Bob) Wilson (hereinafter referred to as "Bob") and Linda F. Wilson for the taxable years 1966 and 1967 in the amounts of $10,290.03 and $8,636.59, respectively. Respondent's determinations were contested by petition filed in this *120 Court jointly by Bob and Linda Wilson. Trial of the matter was held in June 1972, and on April 27, 1973, we entered our decision in the case, sustaining the deficiencies determined by respondent. On July 25, 1973, (89 days after the decision was entered), Linda F. Wilson (hereinafter referred to as "petitioner") filed motions to vacate the decision, to reopen the proceedings, and to permit a substitution of her counsel. In a Memorandum Sur Order, issued August 20, 1973, we denied petitioner's motions. This order was appealed by petitioner to the Second Circuit Court of Appeals, which reversed and remanded the matter to us for further factual and legal determinations bearing upon the merits of petitioner's motions. A hearing on such matters was held on March 7, 1975. FINDINGS OF FACT Petitioner and Bob filed joint Federal income tax returns for the taxable years 1966 and 1967. The major portion of the gross income reported therein had been earned by Bob. Petitioner, an actress, was unsophisticated in income tax and legal matters and had left the handling of the joint income tax returns entirely to Bob. Bob, in turn, had the returns prepared by Harold Newman, an attorney *121 and C.P.A. At some point in late 1970, Bob and Newman advised petitioner that the Internal Revenue Service had determined material deficiencies in the 1966 and 1967 joint returns of petitioner and Bob, and that it would be necessary to contest these determinations in court. Linda was asked to sign the petition to be filed in the United States Tax Court, and she did so. Meanwhile, in September 1971, petitioner brought an action against Bob for support and alimony, and later that year sought an annulment of their marriage. In these marital proceedings Bob was represented by Newman and petitioner was represented by Harold Sachs and Henry Bushkin. The trial of the Tax Court case on the 1966 and 1967 joint income tax deficiencies was scheduled for June 1972. A few months prior to the trial date, while the marital litigation between petitioner and Bob was still pending, Newman contacted petitioner to advise her that the tax case was to be tried and that she would have to be a witness. At approximately the same time petitioner was told the same thing by Bob. Neither Newman nor Bob discussed the details of the case with petitioner, and at this point petitioner viewed the matter *122 as essentially Bob's concern, since Bob had always handled income tax matters. A few days before the trial Newman again called petitioner to advise her of the exact time and place of trial, at which she was to appear as a witness. Newman did not discuss with petitioner in advance of trial the testimony which she was to give. During the course of the trial petitioner began to feel "unprotected" and "alone" as she observed Bob and Newman conferring on various matters. At this time petitioner's marital litigation against Bob was still pending, and Newman had been representing Bob in those matters. Thus, in the marital litigation, petitioner and Newman were adversaries, even though Newman purported to represent both Bob and petitioner in the tax litigation. Newman had assured petitioner that the marital litigation and the income tax litigation were entirely different matters and that as to the tax litigation, he could properly represent both petitioner and Bob. However, during a recess in the Tax Court trial, petitioner telephoned her attorney in the marital litigation, Henry Bushkin. Bushkin, who had previously known nothing about petitioner's Tax Court case, did not believe *123 that Newman could adequately represent petitioner's interests, since he was essentially Bob's attorney. However, Bushkin was about to leave on a trip and was unable to appear at the Tax Court proceedings that day to assist petitioner. He advised her not to take the witness stand without her own attorney present. If she should be compelled to testify, he advised her to preface her testimony with a statement explaining that the validity of her marriage to Bob was currently being contested. Petitioner eventually did testify and did advise the Court of the pending litigation in which the validity of the marriage was in question. At the time she made such statement, Newman stated that he did not think that it was relevant, and he proceeded with his questions on direct examination. On January 12, 1973, the Supreme Court of the State of New York declared the marriage of petitioner and Bob to be a nullity. On April 18, 1973, this Court rendered its opinion [1] sustaining the deficiencies determined by respondent in the joint returns of Bob and petitioner for 1966 and 1967. Decision was entered April 27, 1973. When petitioner returned *124 from Europe in May of 1973 she learned of the adverse decision in the Tax Court case, as a result of which substantial sums of money were now owing, and she realized, perhaps for the first time, that the matter had serious financial implication for her, and not just for Bob. Thereupon she retained her own counsel to represent her in the income tax matter. In July 1973 her new counsel filed the motions (which are the subject of the instant proceeding) to vacate the prior decision and reopen proceedings. OPINION Petitioner's motion to reopen proceedings herein is for the purpose of permitting her income tax liability to be recomputed on an individual return basis, rather than through the joint return originally filed with Bob, since petitioner's marriage to Bob has been declared null and void abinitio, and joint returns may only be filed by husband and wife. Section 6013. [2] By having her income treated separately from Bob's, petitioner would be responsible only for the deficiencies, if any, on her own reported net income and would not be liable for any deficiencies in Bob's reported net income for the two years at issue. *125 The granting or denial of petitioner's motions is a matter of judicial discretion. Rule 50(b), Rules of Practice and Procedure, United States Tax Court. Chiquita Mining Co. v. Commissioner,148 F.2d 306 (9th Cir. 1945), affg. a Memorandum Opinion of this Court. In our original denial of her motions we stated that petitioner's reasons for reopening the case were belated and were not sufficiently meritorious. The Court of Appeals has determined that the interests of justice require that we afford petitioner the opportunity for a hearing to present her reasons for reopening the case. After having heard petitioner's testimony, as well as that of witnesses presented by respondent, we have concluded that petitioner's motions should be granted. Petitioner's failure to timely raise the issue of reporting her income on a separate return basis was caused by her lack of adequate representation by independent counsel at and subsequent to the original trial herein. Her failure to retain independent counsel was due to reasonable cause and was not due to negligence on her part. Petitioner was not knowledgeable or sophisticated in income tax or legal matters. She relied *126 almost exclusively upon Bob to handle their income tax returns during the years prior to their annulment. (She testified that she was not even aware that it was possible for married couples to file separate returns.) Moreover, since her income as an actress was relatively insignificant in relation to Bob's income, and since Bob generally managed their financial affairs, she had always assumed that the payment of income taxes was basically Bob's responsibility. This view of things persisted even through the original litigation in this Court of the deficiencies determined by respondent for 1966 and 1967, i.e., that the tax dispute was Bob's problem and responsibility. Ordinarily such naivete would not be sufficient grounds for reopening a case on the basis of lack of adequate representation by counsel. See Coussement v. Commissioner,391 F.2d 227 (6th Cir. 1968), affg. a Memorandum Opinion of this Court; Chiquita Mining Co. v. Commissioner,supra;Crane-Johnson Co.v. Commissioner,105 F.2d 740 (8th Cir. 1939), affg. 38 B.T.A. 1355 (1938), affd. 311 U.S. 54 (1940). However, in the instant *127 case we are presented with a situation in which petitioner's counsel, Harold Newman, also represented a co-petitioner, Bob, whose interests were inconsistent with those of petitioner. It is clear the conflict of interests was unknown to petitioner. It is also clear that the interest primarily served by Newman was Bob's. Newman had assisted Bob in the preparation of the tax returns, had dealt almost exclusively with Bob in the handling of the Tax Court litigation, and represented Bob in the marital litigation in which petitioner was the adversary party. His representation of petitioner in the Tax Court litigation was purely incidental to his representation of Bob. The recomputation of petitioner's and Bob's tax liability on an individual return basis would clearly have been detrimental to Bob, and thus, Newman was not in a position to advise petitioner of the advantage to her in doing so. In opposing petitioner's motions herein, respondent refers to numerous circumstances and events prior to the original decision in this case which, he alleges, should have caused petitioner to retain her own independent counsel. Most, if not all, of such circumstances and events are reflected *128 in our Findings of Fact herein. However, as we view the circumstances, taken as a whole, and considering petitioner's lack of sophistication in legal and tax matters, we cannot conclude that petitioner should be foreclosed from asserting her rights at this time because of her earlier failure to retain independent counsel. The critical fact is that petitioner was unaware of the significance of independent counsel, particularly in light of Newman's assurances that separate counsel was not necessary. It was Newman's conflict of interests, rather than any fault or neglect on petitioner's part, which precluded her raising the separate return issue before the original decision was entered herein. [3]
Accordingly, petitioner's motions to vacate the original decision, reopen proceedings, and substitute counsel are granted. We turn now to the merits of petitioner's contentions in the reopened proceedings. Petitioner *129 contends that her income tax liability for the years 1966 and 1967, although originally determined in joint returns filed with Bob, should now be recomputed on the basis of separate returns for each year. Petitioner relies upon Rev. Rul. 67-442, 1967-2 C.B. 65, which provides in pertinent part, as follows: Where a State court, in a proceeding in which there is personal jurisdiction of the parties or jurisdiction of the subject matter of the action, declares a prior divorce to be invalid, the Internal Revenue Service will usually follow the later court decision rather than the prior divorce decree for Federal tax purposes. In this regard the Service will not follow the decisions in the cases of the Estate of HermanBorax v. Commissioner,349 F.2d 666 (1965), certiorari denied, 383 U.S. 935 (1966); and Harold E. Wondsel v. Commissioner,350 F.2d 339 (1965), certiorari denied, 383 U.S. 935 (1966). In the instant situation, since petitioner's marriage to Bob was declared a nullity by a New York court in 1973, under the foregoing ruling petitioner should be treated as if she had been a single person *130 for tax purposes in 1966 and 1967. The effect of state court decrees in domestic relations litigation upon the determination of marital status for Federal tax purposes has been the subject of several recent cases. In Estate of Goldwater v. Commissioner, F.2d (2d Cir., June 29, 1976), affg. 64 T.C. 540 (1975) and in Estate of Wesley A. Steffke, F.2d (7th Cir., June 24, 1976), affg. 64 T.C. 530 (1975), it was held that a state court decree invalidating a prior divorce will operate to prevent the "divorced" party from being the surviving spouse (for estate tax marital deduction purposes) of a subsequent marriage to a person who dies domiciled in the state in which the prior divorce was ruled invalid. The holding in these two recent cases is entirely consistent with the position taken by the Commissioner in Rev. Rul. 67-442, supra.[4]
*131 Moreover, respondent in the instant case has not denied the continued general applicability of the positions stated in Rev. Rul. 67-442. In fact, respondent has previously accepted amended individual returns from petitioner for 1968, 1969 and 1970, the three years subsequent to the years at issue herein. Respondent's only argument against the application of the revenue ruling in the instant case is that petitioner has already litigated her 1966 and 1967 tax liability on a joint return basis, and "the strong public interest in the finality of litigation" should prevent petitioner from now raising new arguments to avoid the original adverse result. The Court of Appeals, however, has stated that such a principle is not inflexible and must defer, in the proper circumstances, to more compelling considerations in the interests of justice. Accordingly, we hold that petitioner should be permitted to recompute her income tax liability for the years 1966 and 1967 on an individual return basis. Revised decision will be entered under Rule 155.
Footnotes
1. T.C. Memo. 1973-92↩.
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. In this connection, it should be particularly noted that when petitioner at the original trial attempted to apprise the Court of the pending litigation over the validity of her marriage to Bob, Newman immediately stated that such matter was notrelevant.↩
4. In fact, the courts in both Estate of Goldwater v. Commissioner, F.2d (2d Cir., June 29, 1976), affg. 64 T.C. 540 (1975); and Estate of Wesley A. Steffke, F.2d (7th Cir., June 24, 1976), affg. 64 T.C. 530 (1975), take pains to distinguish Borax' Estate v. Commissioner,349 F.2d 666 (2d Cir. 1965), revg. 40 T.C. 1001 (1963), cert. denied 383 U.S. 935 (1966); and Wondsel v. Commissioner,350 F.2d 339 (2d Cir. 1965), modifying a Memorandum Opinion of this Court, cert. denied 383 U.S. 935 (1966), both of which the Commissioner specifically declined to follow in Rev. Rul. 67-442. In Estate of Spalding v. Commissioner, F.2d (2d Cir., June 18, 1976), revg. a Memorandum Opinion of this Court, it was held that a New York decree invalidating a Nevada divorce didnot↩ prevent the divorced husband from being the surviving spouse of a woman he had subsequently married and lived with in California until her death. However, in this case the decree invalidating the prior divorce was not deemed controlling because it was not issued in the state in which the decedent was domiciled at death.